Southern Cotton Oil Company *v.* Napoleon Hill Cotton Company.

Opinion delivered June 30, 1913.

1. Subrogation—discharge of encumbrance—volunteer.—A. took a mortgage on the property of B. and advanced B. money with the express understanding that B. discharge certain prior mortgages on the property, and that A. have a first lien on the property. B. discharged the prior encumbrances. *Held*, A. was subrogated to the rights of the prior mortgagees, and not being a volunteer, was entitled to a first lien on the property as against a judgment-creditor, of whom A. had no knowledge, and was not negligent in not discovering, due to improper indexing of the judgment. (Page 558.)

2. Subrogation—doctrine of.—The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice. (Page 558.)

Appeal from Independence Chancery Court; *George T. Humphries,* Chancellor; reversed.

### STATEMENT BY THE COURT.

Appellant brought suit for subrogation to the lien of certain mortgagees whose mortgage debts were paid off by the money loaned by it for the purpose under the agreement that it would be given a first mortgage lien upon the property. J. U. Martin testified that on December 31, 1908, he gave a mortgage upon the lands and the gin situate thereon to Hugh Wright for sixteen hundred dollars, and on April 6, 1909, another on the same property to G. E. Yeatman for eight hundred dollars. On the 23d of April, 1909, the appellee company recovered a judgment against him in the Independence Circuit Court, where the land was situated, which constituted a lien thereon. . Martin applied to the Southern Cotton Oil Company to borrow money to pay off the two prior mortgages upon the land and gin, and on the 4th of February, 1910, borrowed from it $2,200, giving a mortgage upon the property to secure same. With this money he paid off both of said mortgage debts, and the mortgages securing them were satisfied of record. There was no agreement that the lien of the mortgages should be kept alive, but Martin told appellee that the money was to be used to pay them off, and that the mortgage securing its payment would be a first lien upon the land; that when he got the money he would pay off the other two, and the title would be cleared up. It was his intention to make it a first lien, and the cotton oil company understood that there was no other encumbrances against the land after the payment of said mortgages prior to its own; that it had a first lien by reason of its mortgage, as was intended to be given it upon the loan being made. The cotton oil company had no knowledge in fact of appellee's judgment lien against the property at the time it made the loan and took its security. Its representative, who agreed to make the loan, said, "I didn't know there was a judgment against it; I agreed to advance him the $2,200, and understood that the record would be cleared so that our mort-

gage would be first, and that there wouldn't be anything else against the property in any way; I wouldn't have advanced the money under any other conditions and the advances being on the condition that our mortgage would be first; I advanced it with the understanding that Martin was to have the existing mortgages satisfied, and give me a mortgage which I considered would be a first lien." The index to the record of the judgment only showed a judgment against W. R. Rice, *et al.* The chancery court found that there was no agreement express or implied between appellant, Martin, or the older mortgagees that it should be subrogated to their rights under their mortgages, and that it agreed to loan Martin the $2,200, and to take a mortgage on the property, believing at the time that it was getting a first lien thereon, and from said loan the debts held by Ware and Yeatman should be paid and the mortgages satisfied.

The complaint was dismissed for want of equity, and from the decree appellants appeal.

*Jno. W. & Jos. M. Stayton,* for appellant.

1. Under the circumstances, the doctrine of conventional or equitable assignment applies, and appellant is invested with the lien of the mortgages satisfied to the extent it discharged the prior liens. 44 Ark. 507; 3 Pomeroy, Eq. Jur., § 112; 39 Ark. 542; 44 *Id.* 506; 81 *Id.* 257. No express agreement is necessary as the courts will infer an agreement from the circumstances. 137 Fed. 967; 111 Fed. 652; 101 *Id.* 159.

2. Where the debtor made an agreement with a person advancing money to pay off an encumbrance, that he should have a first lien, and the money was so used, the party advancing it is subrogated to all rights of the creditor whose debt has been discharged. 38 S. E. 382; 58 Oh. St. 443; 49 Minn. 386; 93 N. Y. 225; 77 Ind. 241; 48 Mich. 238; 35 Kan. 295; 100 Ill. 281; 58 Oh. St. 86; 16 Utah 111; 139 Ind. 325; 128 Iowa 1; 89 Ill. 199; 84 Me. 291; 36 Kan. 680; 130 Ind. 288; 56 Kan. 750; 52 Mo. App. 474.

3. The entry of the clerk was not constructive notice. 1 Purd. Dig., 825, p. 16; 15 Pa. 177; 1 L. R. A. 38; 74 Atl. 550; 64 *Id.* 526; 33 Hun. 82; 58 *Id.* 608.

· *George B. Rose* and *Ernest Neill,* for appellee.

1. This case is controlled by *Cohn* v. *Hoffman,* 50 Ark. 376; 89 Ark. 151; 44 *Id.* 504; 80 *Id.* 197.

2. As to the defect in indexing and misprisions of officers, the rule in this State is settled by *Petray* v. *Howell,* 20 Ark. 615; 43 Ark. 144; 59 *Id.* 280.

Kirby, J., (after stating the facts). It is not contended that there was any express agreement between Martin and appellant that it should be subrogated to the rights of the prior mortgagees upon the payment of their debts out of the money which it loaned for that purpose, but, it is insisted that since it made the loan with the expressed understanding and agreement that its security upon the property therefor should constitute a first lien, the other mortgage debts having been paid off with its money, and that it is entitled to subrogation to the rights of said mortgagees as against the judgment lien of appellee, of which it was ignorant when it made the loan and took its security. It was not a volunteer in the payment of these other mortgage debts, the loan having been negotiated from it by the mortgage debtor for the express purpose of paying them. "One who pays a debt at the instance of a debtor is not a volunteer." *Rodman* v. *Sanders,* 44 Ark. 504.

The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties without regard to form, and its purpose and object is the prevention of injustice. ·Cyc. also says, "And generally, where it is equitable that a person, not a mere stranger, intermeddler, or volunteer, furnishing money to pay a debt, should be substituted for or in the place of the creditor, such person will be so substituted." 37 Cyc. 371.

In *Chaffe & Bro.* v. *Oliver,* 39 Ark. 542, this court said: "Subrogation, in its literal and equitable significance, is the demanding of something under the right of

another, to which right the claimant is entitled for the
purposes of justice to be substituted in place of the orig-
inal holder. Its phases are various, but it preserves its
characteristic features throughout. It is the machinery
by which the equity of one man is worked out through the
legal rights of another. It rests upon the maxim that no
one shall be enriched by another's loss, and may be in-
voked wherever justice and good conscience demand its
application in opposition to the technical rules of law,
which liberate securities with the extinguishment of the
original debt. This equity arises when one not primarily
bound to pay a debt, or remove an incumbrance, neverthe-
less does so; either from his legal obligation, as in case of
a surety, or to protect his own secondary right; or upon
the request of the original debtor, and upon the faith that,
as against the debtor, the person paying will have the
same sureties for reimbursement as the creditor had for
payment. And this equity need not rest upon any formal
contract or written instrument. Like the vendor's lien
for purchase money, it is a creation of a court of equity
from the circumstances.'' The theory of equitable as-
signment, as laid down by Pomeroy is: ''In general,
when any person having a subsequent interest in the
premises, and who is therefore entitled to redeem for the
purpose of protecting such interest, and who is not the
principal debtor, primarily and absolutely liable for the
mortgage debt, pays off the mortgage, he thereby be-
comes an equitable assignee thereof, and may keep alive
and enforce the lien so far as may be necessary in equity
for his own benefit; he is subrogated to the rights of the
mortgagee to the extent necessary for his own equitable
protection. The doctrine is also justly extended, by anal-
ogy, to one who, having no previous interest, and being
under no obligation, pays off the mortgage, or advances
money for its payment, at the instance of a debtor party
and for his own benefit; such a person is in no true sense
a mere stranger and volunteer.'' Pomeroy, Equity
Juris., vol. 3, § 1212.

. In *Capen* v. *Garrison,* 193 Mo. 335, 92 S. W. 368, 5 L.

R. A. (N. S.) 838, the court said: "Equity will not in-graft this doctrine on the transaction in the face of a con-tract that negatives the idea of subrogation. In other words, the contract may be silent on the subject, yet not inconsistent with the idea of subrogation; or, on the other hand, it may be silent on the subject, yet its terms ex-pressly or by implication forbid the application of the doctrine. So it may be said that equity may apply the doctrine, although the contract does not either expressly, or by legal implication, call for it; but it will not apply if the contract either expressly or by legal implication forbids it. The parties may not have had subrogation in their minds at all when they made the contract; but that fact alone would not control in a question of application of the doctrine. Equity will apply it, though the parties may never have thought of it, if it is not inconsistent with the contract or in violation of any one's legal rights, and if justice demands it. * * * The usual application of this principle occurs where a person, at the request of the debtor, pays the mortgage debt, or where one inter-ested in the property pays an encumbrance to protect his own interest, or where he stands in the relation of surety to the debt." It is undisputed that both the mortgagor, Martin, and the mortgagee, appellants, understood when the mortgage was executed that the debt secured by the two prior mortgages were to be paid with the money ad-vanced on this mortgage, and that it would be a first lien against the property for the money so advanced. It was not agreed, and it was not the intention of the parties that said other mortgages should be assigned to appellee upon the payment of the debts secured by them with money advanced by it, it is true, but it would have had the right to insist upon such assignment, and since its security failed to constitute a first lien because of the judgment of appellee, of which appellant was ignorant at the time of taking its mortgage, we see no reason why equity should not treat it as an assignee of the first mortgages discharged with the money advanced by it and under its doctrine of equitable assignment and effec-

tuate the agreement with the lender that its security should be a first lien. It had the right after its mortgage was made to apply the money advanced in payment of the other mortgages and take an assignment thereof to protect itself, and in holding that appellant became the equitable owner of said mortgages upon their payment with the money so advanced by it, and in applying the doctrine of subrogation the appellee company is in no worse position than it would have been if said mortgages had not been paid and no injustice is done it, for it can not complain that the subrogation makes its position less favorable than it would have been if appellant company had not made the loan and advanced the money to pay off said mortgages. It can, by a proper procedure for the payee to have the credit or satisfaction of the judgment set aside, if it has been entered, and the said judgment will continue and remain a binding obligation against the judgment-debtor constituting a lien against his property as though no such credit or satisfaction was entered. Having made the payment, it was entitled to the benefit of the doctrine of subrogation, and became the assignee of the claims paid, and not being a volunteer or stranger, it is immaterial that a release instead of an assignment was made. No rights of innocent third persons having intervened the release does not prevent the person making the payment or furnishing the money therefor from becoming the equitable assignee of the claims paid. *Sidener* v. *Parey,* 77 Ind. 241 ;*Loan Assn.* v. *Sparks,* 111 Fed. 652; *Rachel* v. *Smith,* 101 Fed. 159; *Wilkins* v. *Gibson,* 38 S. E. 382. See also 5 L. R. A. (N. S.) 3 div. case-note to *Capen* v. *Garrison,* p. 845. Appellees insist that the case should be affirmed as controlled by the decision in *Cohn* v. *Hoffman,* 50 Ark. 108. In that case a person furnished the money to pay the remaining note due for purchase money of the land, and there was no agreement nor understanding that he was to succeed to the vendor's lien, and no assignment of the note was taken by him. Nor was there any element of mistake therein as in this case, and the court said: "No circumstance connected with

the transaction manifested an intention to keep the lien alive for his protection.'' Here the parties expressly agreed that the appellant, mortgagee, was to have a first lien upon the premises, and while it is true they thought that the record of its mortgage and the payment of the debt secured by the two prior mortgages and their release would effectuate that purpose; it failed to do so because of the lien of the judgment of appellee intervening, of which appellant was ignorant and should not be charged with negligence in failing to discover it since an examination of the index to the record of judgments would not have disclosed it.

It follows from the principles announced that under the doctrine of equitable assignment and subrogation, appellant, the Southern Cotton Oil Company, was entitled to subrogation to the rights of the prior mortgages to the amount of their claims paid by the money advanced by it, and to the satisfaction therefor out of the property prior to the payment of the lien of appellee, which must be postponed to such payment. The decree is reversed and the cause remanded with directions to enter a decree in accordance with this opinion, subrogating appellant to the right to foreclose liens against said property for the amount so paid the prior mortgagees; and, if the same is not paid, that the property shall be sold and that amount of the proceeds thereof paid to said The Southern Cotton Oil Company free from the lien of the judgment.

HART and SMITH, JJ., dissent.