SOUTHERN TRUST COMPANY *v.* GARNER.

Opinion delivered July 5, 1920.

1. SUBROGATION—LOAN USED TO PAY OFF PRIOR MORTGAGE.—A bank which lent money on mortgaged chattels in reliance on the borrower's representation that they were unincumbered, and took a mortgage thereon, was not entitled to be subrogated to the rights of the prior mortgagee to the extent to which the loan was used to pay off the prior mortgage; there being no agreement in regard to the payment of the prior mortgage, and the prior mortgagee being unaware of the fraud practiced on the bank, and the prior mortgage being duly recorded.

2. SUBROGATION—PAYMENT OF PART OF DEBT.—Subrogation will not be granted while a portion of the debt due the prior mortgagee whose obligation was paid with funds of the lender bank is still unpaid.

3. LANDLORD AND TENANT — LIEN.—Where a landlord brought attachment against a portion of her tenant's crop to enforce her lien, and dismissed the action on the tenant's agreement to pay a balance of rent due by building a barn, but the tenant died without performance, the landlord was entitled to a lien on a portion of the crop not attached by her, in the hands of a receiver after the tenant's death.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; reversed in part.

· *Sam T. Poe, Malcolm W. Gannaway* and *Tom Poe,* for appellant Southern Trust Company.

1. The chancery court erred in ordering the receiver to pay the Gates Mercantile Company its claim in full before subrogating the Southern Trust Company to the lien of the Gates Mercantile Company as to the $2,000 which had gone to the satisfaction of the Gates Company claim. 25 R. C. L. 1318; 76 Ark. 249.

2. The Southern Trust Company should be subrogated to the lien of Gates Mercantile Company as to the $2,000, regardless of payment of Gates Company claim in full. 108 Ark. 555-8-9.

*Trimble & Trimble,* for Gates Mercantile Company and Morris & High.

The doctrine of equitable subrogation does not arise in this case. The Southern Trust Company did not pay the Gates mortgage. Subrogation is a creature of equity and is not permitted where it will work injustice. 25 R. C. L., par. 9. It will not be enforced when the equities are equal or the rights not clear. 4 A. L. R. 515. The Southern Trust Company does not fall within the rule. 108 Ark. 556 is not applicable. Subrogation is not granted as a reward for negligence, and is not granted to one who has taken a mortgage to secure a loan with which prior encumbrances are paid off without the exercise of proper diligence in examining the records to discover the existence of other intervening judgments or encumbraces. 2 Jones on Mortg. (7 ed), § 674; 95 Ill. 39; 96 Ark. 600; 76 Ark. 245. The whole debt must be paid and the creditor wholly satisfied. Sheldon on Subrogation, art. 127; 4 Pom., Eq. Jur., art. 1419; 27 A. & E. Enc. L. 210; 34 Ark. 113; 2 Jones on Mortg. (7 ed.), 885 a. Subrogation does not arise upon part payment of a debt. *Ib.* There must be full payment of the debt. *Ib.;* 35 Am. Rep. 511. See, also, 84 N. Y. 434-5.

No such privity as will sustain an action for money had and received exists between one who receives from

a third person money fraudulently obtained by the latter and the owner unless the recipient of the money was aware of the fraud. 22 So. Rep. 580; 67 Am. St. 95; 7 Humph. (Tenn.), 270; 78 Ill. App. 451; 5 Hun. (N. Y.), 123.

An action for money had and received can not be maintained against one who has received money under a claim of right and in ignorance of its ownership. 27 Cyc. 863. The Gates Company and Morris & High were innocent and *bona fide* creditors, ignorant of any transaction between the trust company and Rhea in the negotiation of the loan or of any fraud in its procurement. The court was correct in directing the receiver to pay the balance due Gates Company on its mortgage, and erred in holding that after the payment of the Gates debt the balance of the proceeds of the sale should be paid to the Southern Trust Company in preference to Morris & High, the latter's lien being second to the Gates mortgage and prior to that of the Southern Trust Company.

*Price Shofner*, for appellee Florence D. Pierson.

1. The landlord's lien, under Kirby's Digest, §§ 5632-3, was not waived. A mortgage by tenants for rent is cumulative to the lien. 56 Ark. 499; 20 S. W. 406.

2. The finding by the chancellor on conflicting evidence will not be disturbed on appeal. 55 Ark. 7; 101 *Id.* 573. Nor reversed, unless clearly against the preponderance of the evidence. 81 Ark. 68; 112 *Id.* 134; *Ib.* 337. See, also, 90 Ark. 426; 92 *Id.* 546. The presumption is in favor of the finding. 101 Ark. 252.

SMITH, J. In the trial of this cause in the court below a number of issues were involved which have passed out of the case, and there is presented now only the question of the right of subrogation raised by the Southern Trust Company and the right of Mrs. F. D. Pierson to priority in the payment of a demand asserted by her. These issues arise out of the following facts.

One W. S. Rhea had a lease on a plantation owned by Mrs. Pierson, for the years 1918, 1919 and 1920, and had grown a crop thereon for the year 1918. Rhea had

a large number of mules and horses, wagons and farming implements of various kinds, together with seed and feed, and other personal property. Rhea was indebted to the Gates Mercantile Company in the sum of $3,463.18, and that indebtedness was secured by a mortgage on the bulk of Rhea's personal property dated May 7, 1918, and recorded May 24, 1918. Rhea was also indebted to Morris & High in the sum of $2,052.10, which was secured by a mortgage on all of the personal property included in the mortgage of the Gates Mercantile Company and upon the balance of the personal property owned by Rhea. This mortgage was dated February 5, 1919, and recorded February 7, 1919. This mortgage to Morris & High included a number of mules and other personal property which Rhea had bought but had not fully paid for, the title to which had been reserved by the respeative vendors. These vendors became parties to this litigation, and have been paid the balances due them out of the proceeds of the sale of the property which they had sold to Rhea.

The Gates Mercantile Company demanded the payment of the sum due it, and threatened to foreclose its mortgage. Thereafter Rhea applied to, and secured from, the Southern Trust Company, a loan of $4,000, and by way of security therefor executed a mortgage on the property included in the mortgages to the Gates Mercantile Company and to Morris & High. This mortgage was dated February 12, 1919. In making the application for this loan Rhea represented to the president of the Trust Company that the property was unencumbered, and the loan was made in reliance upon that representation. The president of the trust company made no effort to verify Rhea's statement that the property was unencumbered. The $4,000 borrowed from the trust company was placed in the trust company to the credit of Rhea, who immediately drew a check for $2,000 against that account in favor of the Gates Mercantile Company. When this check was delivered to the Gates Mercantile Company, no explanation was made as to the source from

whence it came, and the Gates Mercantile Company had no knowledge on that subject. It did agree, however, when that payment was made, to carry the balance due on the account without foreclosing the mortgage until the following fall. The property embraced in the mortgage to the Southern Trust Company, which included Rhea's lease on the plantation and his interest in his contracts with his tenants, was represented to be worth, and was supposed to be worth, about $11,000; but Rhea died a few weeks after executing the mortgage to the trust company, and this litigation was begun by his various creditors to collect their respective debts. A receiver was appointed, who took charge of all the property and sold it under the direction of the court.

The receiver reported that from the sale of the property included in the Gates Mercantile Company mortgage he had received the sum of $3,590.60, and that from the sale of the property embraced in the mortgages to Morris & High and the trust company, and not included in the mortgage to the Gates Mercantile Company, he had received the sum of $3,666.55.

As had been stated, the indebtedness to the Gates Mercantile Company had been reduced by the $2,000 payment made by Rhea, so that only the sum of $1,463.18 remained due it. The trust company insisted that as the $2,000 which was paid the Gates Mercantile Company was a part of the loan which it had made Rhea, that it should be subrogated to the rights of that company as a first mortgagee to the extent of that payment. The court denied that relief, and the trust company has appealed.

After ordering the payment of the balance due the Gates Mercantile Company, towit, $1,463.18, out of the proceeds of the sale of the property mortgaged that company, and that a payment of $60 be made to one T. A. Payne—an order which no one questions—and that the sum of $150 be paid Mrs. Pierson as balance due on her rent, the court directed the receiver to pay the balance of the proceeds derived from the sale of the property embraced in the mortgage of the Gates Mercan-

tile Company to the Southern Trust Company; and from that order Morris & High have appealed.

The claims of the holders of the vendors' liens on the property embraced in the mortgages to Morris & High and to the trust company, but which were not included in the mortgage to the Gates Mercantile Company, were paid by the receiver by order of the court out of the proceeds of the sale of that property, and, in addition, the costs of the receivership amounting to something over $1,200 were paid, so that there did not remain enough to pay Morris & High the sum due them.

It is said that, upon the authority of the case of *Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.,* 108 Ark. 555, subrogation should have been granted to the trust company. We think, however, that that case announces no principle which warrants the granting of that relief here. There money was loaned for the express purpose of paying off two mortgages, and a new mortgage which was to be given to secure this loan would have constituted a first lien, but for the fact that a judgment-lien intervened between the two old mortgages and the new one, and the court found the fact to be that there was no negligence in failing to discover this judgment-lien, ''since an examination of the index to the record of judgments would not have disclosed it.'' Here there was no agreement in regard to the payment of the Gates Mercantile Company mortgage, and while a fraud was practiced on the trust company by Rhea, the Gates Company was unaware of that fact, and its mortgage was duly of record. That fact charged the trust company with constructive notice, and this constructive notice would have been made actual by inquiry at the office of the clerk and recorder. The payment to the Gates Company was made in the ordinary course of business by a check drawn on the trust company, and but for this payment that company would have begun foreclosure proceedings with reasonable prospect of making all its money, as Rhea was then alive and well and apparently able to command credit. Moreover, the

property might have brought the amount of their debt at a sale at that time, and the delay and expense incident to the receivership might have been averted. Besides, the trust company paid only a portion of the debt due the Gates Company, and it was not proper, therefore, to grant subrogation while a portion of the debt due the Gates Company was still unpaid. *Barton* v. *Matthews,* 141 Ark. 262; 25 R. C. L., Title, "Subrogation," § 6.

If the trust company is not entitled to subrogation, it must follow that Morris & High should be let in ahead of the trust company, for their mortgage was prior to that of the trust company and embraced the same property. Certainly, the security of Morris & High is not to be impaired by reason of a subsequent transaction between Rhea and the trust company. The status of Morris & High was fixed before the loan was made by the trust company and is unaffected by that loan. Morris & High had the right, when Gates Mercantile Company had been paid its debt (however that payment may have been made), to demand that they be next paid, and that the proceeds of the sale of any property embraced in their mortgage be applied to their debt before any sum was paid to the trust company, and the decree of the court must be reversed in this respect.

Morris & High also appeal from that part of the decree awarding priority of payment to Mrs. Pierson over both themselves and the trust company. But the decree in this respect will be affirmed. There was a balance of $2,200 due Mrs. Pierson for rent, and an attachment suit was brought against Rhea to enforce the landlord's lien in December. Rhea paid all the rent except $150, and agreed to pay that by furnishing certain lumber and by building a barn on the place. The attachment suit was voluntarily dismissed without prejudice; but Rhea died without complying with his agreement. The receiver took charge of certain cotton seed which had never been attached and sold these seed, along with the other property, for a sum in excess of the balance due on rent, and charged the proceeds of the cotton seed into his

general account as receiver. Mrs. Pierson filed an intervention claiming a lien on these seed, and the court properly sustained her claim, and ordered it paid out of the funds in the hands of the receiver.

The decree of the court below is therefore affirmed on the appeal of the Southern Trust Co., and reversed on the appeal of Morris & High, except as to Mrs. Pierson; and is affirmed as to her and is remanded with directions to the court below to amend its decree in accordance with this opinion.

HUMPHREYS, J., dissents.