Delmar F. Courtney, Administrator v. Murphy Duane
Birdsong and Southern Farm Bureau Casualty
Insurance Company

5-4796 437 S.W. 2d 238

Opinion Delivered February 17, 1969

*Tiner* & *Henry* for appellant.

*Hodges, Hodges* & *Hodges* for appellee.

J. Fred Jones, Justice.    Farm Bureau Casualty Insurance Company advanced medical expenses to James Franklin Courtney during the pendency of a suit for personal injuries Courtney filed in the Poinsett County Circuit Court.    Courtney settled his suit by compromise and Farm Bureau sought reimbursement, out of the proceeds of the settlement, for the full amount it had advanced under a subrogation agreement it entered into with Courtney.    Courtney contended that Farm Bureau

was not entitled to full reimbursement for the amount it had advanced, but was liable to Courtney in half that amount as its proportionate share of Courtney's attorney's fee. The trial court awarded Farm Bureau the full amount of its advancement and Courtney has appealed.

James Franklin Courtney is now deceased and this appeal is prosecuted in the name of his personal representative. For the sake of clarity, as well as brevity, the word "appellant," and the name "Courtney," as used herein, refer to James Franklin Courtney who was plaintiff in the trial court. Since the facts of this case are so germane to the problem on appeal, we set them out in some detail.

Courtney sustained personal injuries while riding as a guest in a pickup truck owned and driven by his brother-in-law, Duane Birdsong. Courtney employed an attorney to represent him in a suit for damages for personal injuries, including medical expenses, against Birdsong and agreed to pay his attorney fifty per cent of the amount recovered. The attorney filed suit for Courtney in the Poinsett County Circuit Court on September 19, 1967. Courtney had incurred medical expenses in the amount of $1,797.90 as a result of his injuries and he was covered for medical expenses under an insurance policy issued to his father by Southern Farm Bureau Casualty Insurance Company. On October 30, 1967, Courtney obtained payment of the medical expenses from Southern Farm and signed a "loan receipt" agreeing to pay, or reimburse, Southern Farm the sum of $1,797.90 out of the net amount he would recover from Birdsong. Courtney further agreed, that he would not settle his claim against Birdsong without Southern Farm's knowledge and approval. Courtney's attorney knew that Courtney had obtained payment for medical expenses from Southern Farm but did not know of the agreement he had signed.

On or about November 28, 1967, Courtney's attorney settled the lawsuit by telephone with the attorney for Birdsong's insurance carrier, for the sum of $5,000.00. During the course of the telephone conversation, Courtney's attorney was advised that Southern Farm claimed a subrogation interest in the recovery against Birdsong to the extent of the $1,797.90. Upon receipt of this information, Courtney's attorney requested that the $5,-000.00 be paid in two separate drafts; one payable to Courtney, his attorney and Southern Farm in the amount of $1,797.90, and the other payable to Courtney and his attorney for the remainder of the $5,000.00 settlement. The two drafts, drawn as directed, were received by Courtney's attorney and on November 30, 1967, by an approved order of the circuit court, the suit against Birdsong was dismissed with prejudice.

Upon receipt of the drafts, Courtney's attorney advised Southern Farm of the receipt of the draft for $1,-797.90 and sought to secure a proper endorsement in order that the draft could be cashed and the proceeds divided. Shortly thereafter, Courtney's attorney was contacted by an attorney representing Southern Farm, who demanded that Courtney and his attorney endorse the draft and deliver it to Southern Farm's attorney. Courtney and his attorney refused to comply with this request and on December 7, 1967, Southern Farm filed a motion to set aside the order of dismissal with prejudice and to permit it to intervene. This motion was taken up by the court on March 6, 1968, at which time the original motion to set aside the order of dismissal was abandoned and the hearing proceeded on the disposition to be made of the $1,797.90 which had been paid into the registry of the court by agreement. Southern Farm contended that it was entitled to all of the $1,-797.90 and Courtney contended that one-half of this amount should be applied to his attorney's fee under the fifty per cent contingent fee contract he had with his attorney. The trial court awarded the entire sum of $1,797.90 to Southern Farm and Courtney has designated the following point he relies on for reversal:

"The trial court erred in refusing to allow an attorney's fee for the collection of appellee's (intervenor's) subrogation claim."

We do not quite agree with the appellant as to the point at issue on this appeal. The appellant says:

"The only point at issue in this appeal is whether or not the trial court erred in refusing to allow decedent an attorney's fee for collecting the full amount appellee had expended for medical expenses under its insurance policy."

The actual point at issue, as we see it, does not involve the allowance of appellant's attorney's fee, but does involve who is to pay appellant's attorney's fee. The point at issue involves the question of whether the appellant is required to pay all of his attorney's fee or whether he can require the appellee to pay a part of it under the facts and circumstances of this case.

The appellant relies heavily on our decision in the case of *Washington Fire and Marine Ins. Co.* v. *Hammett,* 237 Ark. 954, 377 S.W. 2d 811. In the *Hammett* case the insurance company issued a $50.00 deductible policy of collision insurance to Hammett. Hammett was involved in a collision with Purcell. The insurance company paid Hammett his property damage and took subrogation in Hammett's cause of action against Purcell. After notifying Purcell of its claim and rights under its subrogation agreement, the insurance company threatened suit against Purcell but did nothing more. Hammett, through his own attorney, sued Purcell for the full amount of the damages and upon compromise, the insurance company was required to contribute its proportionate share of Hammett's attorney's fee as a part of the cost of collection under equitable principles of subrogation, citing *Webster* v. *Horton,* 188 Ark. 610, 67 S.W. 2d 200.

In 50 Am. Jur., Subrogation, §3, page 679, is found the following:

"There are known to the law two kinds of subrogation, one of which is termed 'conventional,' and the other, in contradistinction, 'legal,' or, by reason of its origin and basis, 'equitable.' Some authorities have regarded assignments as a third type. Ordinarily, when the term is used without qualification legal subrogation is meant . . . Legal subrogation is a creature of equity not depending upon contract, but upon the equities of the parties. In its most usual aspect, it arises by operation of law where one having a liability or a right or a fiduciary relation in the premises pays a debt owing by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid. Conventional subrogation, as the term implies, is founded upon some understanding or agreement, express or implied, and without which there is no 'convention.' It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid. The contract right of subrogation is somewhat broader than legal subrogation, for the right is granted irrespective of whether the payment was necessary for the protection of the person seeking subrogation."

In the case at bar the appellant entered into two separate contracts, first with his attorney and secondly with the appellee. His contract with the appellee amounted to more than a mere legal subrogation right to be enforced on equitable principles. He agreed to pay the appellee $1,797.90 out of the net amount he would recover in a lawsuit he had already filed. The appellant, in effect, now seeks to charge the appellee with a part of appellant's attorney's fee incurred in collecting the amount he agreed to pay the appellee.

While this agreement, signed by the decedent, conflicted to some extent with the agreement he made with his attorney in that it purported to give the appellee power of attorney with ''irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in ... its ... name ... any and all legal proceedings ... ;'' this agreement was entitled ''Loan Receipt'' and provided as follows:

''Received From the SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY (hereinafter referred to as 'Company') THE SUM OF Seventeen Hundred Ninety Seven & 19/100 [sic] Dollars ($1797.90) as a loan, without interest repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for injury to James F. Courtney and as security for such repayment the undersigned hereby pledges to the said 'Company' all his, its or their claim or claims against said person, persons, corporation or corporations or other parties, and any recovery thereon, in the above amount.

The undersigned covenants that no settlement has been made by the undersigned with any person, persons, corporation or corporations, or other parties against whom a claim may lie, and no release has been given to anyone responsible for such loss and that no such settlement will be made, nor release given without the written consent of the said company; and the undersigned covenants and agrees to cooperate fully with the said company, to promptly present claim and, if necessary, to commence, enter and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their own name.''

The appellant had already filed his lawsuit before the agreement was entered into with the appellee. The appellant's attorney was entitled to his fee and the appellee was entitled to repayment, to the extent of appellant's net recovery against Birdsong, the full amount of $1,797.90 the appellee had advanced to the appellant. The appellant's attorney knew of the advancement but did not know of the contents of the agreement his client had entered into with appellee until the suit against Birdsong was compromised by telephone with Birdsong's insurance carrier. Upon being advised of appellee's claim, the appellant's attorney directed that the $1,797.90 claimed by the appellee be paid by separate draft drawn payable to his client, himself and the appellee in that amount. This was done and the suit against Birdsong was dismissed with prejudice.

The appellant, in effect, argues that the $1,797.90 represents a part of the *gross* recovery and only half of this amount would represent the *net* recovery out of which he agreed to repay appellee. The appellee argues, in effect, that the $1,797.90 is a part of the *net* recovery and that if the appellant did not pay his attorney out of the remaining $3,202.10 of the gross settlement, that his failure to do so was not the fault of the appellee, and that in no event should appellee be now required to pay any part of appellant's attorney's fee. The trial court agreed with the appellee and we agree with the trial court.

The appellant made two separate agreements in this case. He agreed to pay his attorney fifty per cent of the amount collected in the suit against Birdsong. The appellee paid appellant's medical expenses under a policy it had issued to appellant's father, and the appellant agreed to repay this amount to the appellee out of such net amount he might recover from Birdsong. In the agreement between the appellant and the appellee, the appellant did not require appellee to pay or to contribute to the payment of appellant's attorney's fee and appellee did not agree to do so.

There is no evidence in the record as to what the appellant did with the other draft, presumably in the amount of $3,202.10. The only reference to its disposition is contained in the "Response of Plaintiff to Motion to Set Aside and to Intervene," as follows:

"After receiving the two checks as alleged above, plaintiff paid his attorney all sums which he owed him except his fee of fifty per cent (50%) for the collection of the sum represented by the draft for ONE THOUSAND SEVEN HUNDRED NINETY SEVEN AND 90/100 DOLLARS ($1,-797.90). Accordingly, plaintiff's attorney advised Southern Farm Bureau Casualty Company that Franklin Courtney had indorsed said draft; that plaintiff's attorney was in possession of said draft; that he had indorsed said draft; that he was entitled to fifty per cent (50%) of the amount of such draft; that he stood ready, willing and able to pay Southern Farm Bureau Casualty Company said sum after deducting his fee ...

Plaintiff's attorney has made demands upon the plaintiff for fifty per cent (50%) of the amount of said draft payable upon his contract of employment with the plaintiff. Plaintiff says that he is legally obligated to pay his attorney fifty per cent (50%) of the amount of said draft in accordance with the terms of his contract by which he employed said attorney."

The appellant's attorney is not a party to this lawsuit. If the appellant still owes his attorney any amount on his fee, he should pay it and there is nothing in this case that would prevent him from doing so. The appellant agreed to pay to the appellee $1,797.90 out of the amount he collected from Birdsong, but the appellee did not agree to pay any part of appellant's attorney fee and we find no equitable reason why it should be required to do so now.

When appellant's attorney learned of appellant's agreement with the appellee, he simply directed that a separate draft be drawn for the amount covered by that agreement and the trial court correctly held that this amount should be paid over to the appellee and that the appellant is not entitled to contribution from this amount to apply on appellant's attorney's fee.

Judgement affirmed.