# WELCH FOODS, INC. *v.*
# CHICAGO TITLE INSURANCE COMPANY

99-447                                           17 S.W.3d 467

Supreme Court of Arkansas
Opinion delivered June 1, 2000

*Kim Martin Smith,* Judge;

*Friday, Eldredge & Clark,* by: *James M. Simpson* and *Chris A. Averitt,* for appellant.

*Dover & Dixon, P.A.,* by: *Monte D. Estes,* for appellee.

LAVENSKI R. SMITH, Justice. Welch Foods, Inc. ("Welch"), appeals a summary judgment in favor of Appellee Chicago Title Insurance Company ("Chicago Title"). The Washington County Circuit Court awarded Chicago Title $23,500 for breach of warranty of title, and $6,025 in costs and fees. On appeal, Welch asserts that Chicago Title should not have been permitted to be subrogated to the rights of the buyer in a real estate transaction because it failed to adequately research the title. Welch contends that the equitable principles underlying subrogation preclude recovery. Additionally, Welch asserts that the trial court erred in assessing damages due to insufficient evidence. Finally, Welch argues that the existence of a material fact as to breach of warranty renders summary judgment inappropriate. We find no error and affirm.

*Facts*

On July 12, 1995, Welch conveyed a parcel of land in an industrial area of the City of Springdale by warranty deed to Vail and Rita Paschal, husband and wife, and to William T. and Carolyn Coleman, husband and wife. On July 27, 1995, Chicago Title issued title insurance to the Paschals and the Colemans. On December 13, 1997, the Colemans conveyed their interest in the property to the Paschals. In early 1997, the Paschals discovered that a twenty-foot strip along the west side of the property actually belonged to Southwestern Electric Power Company ("SWEPCO"). This twenty-foot strip comprised a roadway and access from an adjoining street. The Paschals then made a claim against their title insurance policy to Chicago Title. Chicago Title paid the Paschal's $23,500 for the partial failure of title pursuant to the terms of the title insurance policy. They based the damage amount on an appraisal that gave that amount as the quantity of diminished value resulting from title problems. As a result of that payment, pursuant to paragraph 13 of the title policy, Chicago Title was subrogated to the rights of the Paschals in their claims against Welch. Chicago Title then brought suit against Welch, asserting Welch had breached their warranty of title to the Paschals.

On November 4, 1998, Chicago Title filed a motion for summary judgment asserting that the undisputed facts showed Welch had breached its warranty of title, that the sum paid by Chicago Title to the Paschals represented the damages suffered by the Paschals, and that under the terms of the title insurance, Chicago Title was the subrogee and rightful party to bring suit against Welch. In support of its motion, Chicago Title offered the policy of title insurance, the warranty deed showing the conveyance of the twenty-foot strip to SWEPCO in 1930, the appraisal showing diminished value, and an affidavit of Jeanine C. Ames of Chicago Title, containing a summary of the facts.

In opposition, Welch argued that Chicago Title was barred from recovery because its negligence caused the loss. In particular, Welch contended Chicago Title failed to properly research and discover the title defect when it undertook a title search in preparation for issuing the title insurance. Welch also argued that fact questions existed on the issue of damages, because it would have insisted on the same price for the property even had the lesser

acreage been conveyed. Welch offered no supporting documents or affidavits in opposition to those offered by Chicago Title.

On December 16, 1998, Welch filed its own motion for summary judgment. Welch contended no issue of fact existed whether Chicago Title was negligent, and that the court should determine as a matter of law that Chicago Title's suit was barred based upon principles of equity. Again, Welch offered no supporting documents or evidence. The trial court heard both motions on January 28, 1999. At that time, Welch proffered its own appraisal to rebut the damages asserted by Chicago Title, but the trial court did not consider the appraisal because it was not provided "prior to day of the hearing" as required in Ark. R. Civ. P. 56(c). Based upon the pleadings, affidavits, and exhibits, the trial court found the undisputed facts showed Welch breached its warranty of title, and that damage to the title was $23,500 on February 11, 1999. The court awarded $23,500 in damages, $125 in costs, and $5900 in attorney's fees. The trial court thus granted Chicago Title's motion for summary judgment and denied Welch's motion. Welch timely filed its notice of appeal on March 10, 1999.

## Standard of Review

Our review of a trial court's summary judgment focuses on whether the evidence presented by the movant left a material question of fact unanswered. *Mashburn v. Meeker Sharkey Financial Group*, Inc., 339 Ark. 411, 5 S.W.3d 469 (1999). The moving party bears the burden of sustaining the motion, and the proof submitted is viewed in a light most favorable to the party resisting the motion. Once the moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Flentje v. First National Bank Of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

## Subrogation

The principal issue in this case is whether Chicago Title, as subrogee to the buyers in a real estate transaction, is forbidden from enforcing the buyer's rights against the seller who breached the warranty of title contained in its deed, because Chicago Title failed

to discover the defect in the title in its title investigation. This court has not previously answered this question. Welch contends that the equitable nature of subrogation makes Chicago Title subject to equitable defenses. Welch argues that this court has eliminated all distinction between conventional and equitable subrogation. We disagree and affirm.

■ Subrogation at its essence is the substitution of one party for another in the exercise of some legal right. BLACK'S LAW DICTIONARY, p. 1440 (7th ed. 1999). Subrogation is routinely divided into two types. They are conventional subrogation and legal subrogation. The distinction relates to the facts giving rise to the substitution of rights. "Conventional subrogation, as the term implies, is founded upon some understanding or agreement, express or implied, and without which there is no 'convention.' " *Courtney v. Birdsong*, 246 Ark. 162, 437 S.W.2d 238 (1969). Legal or equitable subrogation, on the other hand, is a creature of equity, and not dependent upon contract, but rather dependent upon the equities of the parties. It arises by operation of law. *Courteny*, 246 Ark. at 166.

■ Whether by agreement or by operation of law, the very concept of subrogation is of equitable origin. *Southern Cotton Oil Co. v. Napoleon Hill Cotton Co.*, 108 Ark. 555, 158 S.W.1052 (1913). This equity arises when one not primarily bound to pay a debt, or remove an incumbrance, nevertheless does so; either from his legal obligation, as in the case of a surety, or to protect his own secondary right; or upon the request of the original debtor, and upon the faith that, as against the debtor, the person paying will have the same sureties for reimbursement as the creditor had for payment. *Southern Cotton Oil Co.*, 108 Ark. at 559. Subrogation is a doctrine steeped in equity and generally governed by equitable principles. *Cooper Tire & Rubber Co. v. N.W. Nat'l Cas.*, 268 Ark. 334, 595 S.W.2d 938 (1980); *Baker, Adm'r. v. Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965); *Cooper v. Home Owners Loan Corp.*, 197 Ark. 839, 126 S.W. 112 (1939); *Southern Cotton Oil Co., supra;* and, 73 AM. JUR. 2d, *Subrogation* § 16.

Welch argues that based upon subrogation's equitable origin, the equities between Welch and Chicago Title must be compared before a trial court could grant subrogation as a remedy. Welch cites *Franklin v. Healthsource of Arkansas*, 328 Ark. 163, 942 S.W.2d 837

(1997), for the proposition that the distinctions between conventional and legal subrogation have been entirely eliminated. However, *Franklin* is distinguishable from the instant case on its facts, and it does not stand for the general proposition that conventional and legal subrogation will be treated the same under all circumstances.

*Franklin* clearly dealt with a circumstance not present in the instant facts — the equities existing between an insured and his insurance company. In *Franklin*, the majority refused to enforce an express subrogation clause in favor of the insurance company where the insured had not been made fully whole. By so holding, *Franklin* thus reaffirmed the holding in the case of *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992), and overruled *Higginbotham v. Ark. Blue Cross & Blue Shield*, 312 Ark. 199, 849 S.W.2d 464 (1993), which had enforced a conventional subrogation right even where the insured had not been made whole. The following explicit language in *Franklin* regarding its application makes it inapposite as precedent for the instant case: "[W]e take this opportunity to clarify our position on the priority given to subrogation rights of insureds versus those of insurers in instances where both parties have claims against a partial recovery from a third party." This case does not involve an insured and his insurer. *Franklin* is, therefore, not controlling.

Welch cites *Transamerica Title Ins. Co. v. Johnson*, 103 Wash.2d 409, 693 P.2d 697 (1985), and *First American Title Insurance Co., v. Haggins*, 1998 Ohio App. Lexis 279, 1998 WL 32776 (Ohio App. 8 Dist. 1998)(an unpublished intermediate appellate decision), for the proposition that regardless of the source of the right of subrogation equities between the parties must be balanced.

However, as stated above, our court has not abolished all distinction between conventional and equitable subrogation in every circumstance. Here, where the insurer is exercising express contractual rights of subrogation in a claim against one other than its insured and against one to which it owed no legal duty, or who demonstrated no reliance, equitable defenses are unavailing. Welch acknowledges that it was not a named insured on the title policy but argues that Chicago Title owed it a legal duty and breached that duty. For support Welch relies upon *Bourland v. Title Ins. Co. of Minnesota*, 4 Ark. App. 68, 627 S.W.2d 567 (1982), for the establishment of the title company's duty. Clearly, our cases, and those of

other jurisdictions, establish a duty on the part of title companies to make a reasonable search of the relevant records to detect clouds or defects in title. However, neither our courts, nor those of other jurisdictions, have held that that duty extends beyond those to which the company is contractually obligated, or to those shown to have reasonably relied upon the search. Welch also relies upon *Lawyers Title Ins. Corp. v. Capp*, 174 Ind. App. 633, 369 N.E.2d 672 (1977), but it, too, is quite different from the case at bar. In particular, the *Capp* court noted that the title insurance policy itself involved a tripartite agreement involving the vendor, vendee, and insurer. Moreover, Capp (the vendor) demonstrated reliance upon lawyers. In the instant case, Welch failed to show either contractual obligation or reliance.

### State of the Title/Damages

For its final two points on appeal, Welch argues that material issues of fact remained as to the state of the title and as to damages. To establish these fact issues, Welch sought to introduce a real estate appraisal on the day of the hearing. The trial court refused to consider the appraisal because it was not brought forth prior to the day of the hearing. Welch contends that the court abused its discretion because an appraisal is not an affidavit, and, therefore, Rule 56(c) would not be conclusive. Also, Welch argues that the proffered appraisal would have altered the outcome of the proceedings. Contrary to Welch's contention, Rule 56(c) does indeed apply. Welch supplies no convincing authority that would require reversal of the court's decision in the instant case. Indeed, both *Pinkston v. Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988), and *McMullan v. Molnaird*, 24 Ark. App. 126, 749 S.W.2d 352 (1988), cited by Welch, excluded the proffered evidence as untimely and we find Welch's distinctions unpersuasive where they give no justification for the untimely proffer. We hold the court's refusal to consider the appraisal proffered on the day of the hearing not to be an abuse of discretion. Accordingly, the trial court grant of summary judgment is affirmed.

Affirmed.

CORBIN and THORNTON, JJ., dissent.

Ray Thornton, Justice, dissenting. On July 12, 1955, Welch Foods, Inc., conveyed a parcel of land in Springdale's Industrial Park to Vail and Rita Paschal and William T. and Carolyn Coleman. Two weeks later, Chicago Title issued title insurance to the buyers. It is not clear who paid for the title insurance or whose obligation it was to furnish title insurance. A road serving the property ran along the west side of the property and access to the property was provided by means of an easement to use that road. A twenty foot strip of the road was included in the description of the property conveyed by Welch, who did not own the fee title upon which the road was situated, but only an easement. In 1997, Paschal made a claim against Chicago Title for partial failure of title, claiming $23,500 in damages as a result of only receiving an easement rather than fee title subject to easements in favor of other users of the road. Chicago Title promptly paid this claim and sought relief from Welch because of the erroneous description in the warranty deed from Welch to the Paschals.

The doctrine of subrogation arises from considerations of equity, and in my view should be subject to equitable defenses. While Welch did not timely present its own appraisals for consideration by the court, it contends that its selling price for the land would have been the same regardless of whether the roadway was an easement or a fee title. In my view, Chicago Title was paid for title insurance and was negligent in not discovering and disclosing to the purchaser the flaw in the title. The majority allows Chicago Title to recover from Welch without consideration of Chicago Title's own negligence.

Therefore, I respectfully dissent, and I am authorized to state that Justice Corbin joins in this dissent.