SOUTHERN FARM BUREAU
CASUALTY INSURANCE COMPANY and
Imogene Key *v.* Billy Ray TALLANT

04-1080                                                    207 S.W.3d 468

Supreme Court of Arkansas
Opinion delivered April 21, 2005

---

18

*David Hodges*, for appellant.

*McMillan, Turner, McCorkle, Curry, & Bennington, LLP*, by: *F. Thomas Curry*, for appellee Billy Tallant.

*Watts, Donovan & Tilley, P.A.*, by: *Jim Tilley* and *Michael McCarty Harrison*, for Imogene Key.

J IM HANNAH, Chief Justice. Southern Farm Bureau Casualty Insurance Company (Southern Farm Bureau) appeals an order dismissing this case in its entirety. Southern Farm Bureau intervened under its subrogation rights and asserts that the circuit court erred by: (1) failing to provide a jury trial on the issue of whether Billy Ray Tallant was made whole by the settlement approved in the order; (2) by failing to rule Tallant was estopped from claiming that he was not made whole by accepting the settlement offer, and; (3) by dismissing the case because Southern Farm Bureau's subrogation action against Imogene Key should be allowed to proceed. We affirm the order of the circuit court dismissing the case in its entirety. We have jurisdiction in this case pursuant to Ark. Sup. Ct. R. 1–2(b)(1) and (5) because this case involves an issue of first impression and significant issues needing clarification and development.

## Facts

On May 27, 1998, Tallant was injured when the vehicle he was driving struck a vehicle driven by Imogene Key. Under the terms of Tallant's automobile insurance policy with Southern Farm Bureau, a total of $2,350.92 of his accident–related medical expenses was paid on his behalf. On May 9, 2001, Tallant filed suit against Key based in negligence including the assertion that Key failed to yield the right–of–way. On November 7, 2003, Southern Farm Bureau filed a complaint in intervention asserting a right to subrogation. Shortly after Southern Farm Bureau filed its com-

plaint, Tallant and Key reached an agreement to settle the case. The motion to approve the settlement was filed March 11, 2004, just about three months after Key answered the complaint in intervention. On June 15, 2004, a hearing was held on Tallant's motion to approve the settlement, to dismiss Tallant's complaint against Key with prejudice, and to find that Tallant was not made whole by the settlement.

At the hearing, neither Tallant's attorney nor Key's attorney made any objection to the continuation of the suit by Southern Farm Bureau against Key. Tallant testified that he was a carpenter, that his total medical bills amounted to about $12,200, and that in spite of treatment, his knee was still causing him problems. He testified further that on the job he had difficulty in any task that involved squatting, such as framing of structures and finishing concrete. Additionally, Tallant told the court that he decided to accept the $9500 settlement because he was uncertain of what a jury might do. It appears that Tallant did not mention his knee injury to a doctor until almost a year after the accident and did not tell the doctor that it was due to the accident until five months after first telling the doctor of the knee injury.

At the hearing, Southern Farm Bureau objected to any finding that Tallant was not made whole, asserting that the determination was a question of fact, and that Southern Farm Bureau had a right to have the jury make the decision. The circuit court found that the decision on whether an insured is made whole is an issue of law to be determined by the court. Further, the circuit court found that Tallant was not made whole and, therefore, Tallant was not estopped from receiving the full amount of the proceeds of the settlement.

After the hearing, Tallant's attorney sent a letter to the court withdrawing any consent that the suit by Southern Farm Bureau against Key proceed, noting that the settlement was based on dismissal of the case in its entirety. On July 8, 2004, the circuit court entered an order setting out the findings made at the hearing and dismissing the entire case with prejudice. Southern Farm Bureau filed a motion for reconsideration, which was denied.

### Subrogation

Subrogation is the substitution of one party for another. *Welch Foods, Inc. v. Chicago Title Ins. Co.*, 341 Ark. 515, 17 S.W.3d 467 (2000). The party asserting subrogation is making a

demand under the right of another. *Cooper v. Home Owner's Loan Corp.,* 197 Ark. 839, 126 S.W. 2d 112 (1939); *Chaffe & Bros. v. Oliver,* 39 Ark. 531 (1882). Subrogation is a normal incident of indemnity insurance. *Sentry Ins. Co. v. Stuart,* 246 Ark. 680, 439 S.W. 2d 797 (1969). That is to say that because insurers pay the obligations of their insureds, a right in equity to subrogation in the insurer arises. *Id.* This assures against unjust enrichment by way of double recovery. *Shelter Mut. Ins. Co. v. Bough,* 310 Ark. 21, 834 S.W.2d 637 (1992).

■ A right in equity to subrogation may arise by convention, or in other words, by way of a subrogation provision in a contract; however, it may also arise as legal or equitable subrogation, or in other words by operation of law based on facts giving rise to a right of subrogation. *Welch, supra; Courtney v. Birdsong,* 246 Ark. 162, 437 S.W. 2d 238 (1969). A right of subrogation may also arise from statute. *See, e.g.,* Ark. Code Ann. § 23-89-101 (Repl. 2004).

■ In the context of automobile insurance, an insurer is entitled to subrogation because, while not primarily responsible for paying for injuries and damages suffered by the insured at the hands of a third person, it is under an obligation to pay by reason of the policy of insurance. *Farm Bureau Mut. Ins. Co. v. Riverside Marine Remanufacturing, Inc.,* 278 Ark. 585, 647 S.W. 2d 462 (1983). Thus, under these facts, the right to subrogation arises by operation of law; however, if there is a subrogation provision in the policy, then it also arises by convention.

■ This court once distinguished between legal or equitable subrogation and conventional subrogation. In *Higginbotham v. Arkansas Blue Cross and Blue Shield,* 312 Ark. 199, 849 S.W. 2d 464 (1993), we held that conventional subrogation could differ from equitable or legal subrogation because an insurance company is free to fix the terms and conditions upon which it will offer insurance. However, in *Franklin v. Healthsource of Ark.,* 328 Ark. 163, 942 S.W.2d 837 (1997), we rejected the distinction made in *Higginbotham,* noting the equitable principles underlying subrogation. While insurance companies are free to set terms and conditions, they are not free to define the terms and conditions of the equitable remedy of subrogation. This court in *Higginbotham* was mistaken in characterizing the issue in terms of the freedom to contract. By availing itself of the remedy of subrogation, the

insurer takes the remedy as it is defined by law. While it is the subrogation provision in a contract of insurance that establishes an insurer's right to conventional subrogation, the provision does not and cannot define the nature or extent of the remedy subrogation provides. We noted in *Franklin, supra,* that "[t]he same facts give rise to both legal and conventional subrogation." *Franklin,* 328 Ark. at 167.

At issue in this case is whether Tallant was made whole. Tallant argues that he was not made whole by the total sum received from the settlement and amount paid to him by Southern Farm Bureau. In *Franklin, supra,* this court stated of the question of being made whole:

> As stated by Professor Freedman, "the precise measure of reimbursement is the amount by which the sum received by the insured from the [third party], together with the insurance proceeds, exceeds the loss sustained and the expense incurred by the insured in realizing on his claim."

*Franklin,* 328 Ark. at 168 (quoting Warren Freedman, *Freedman on Insurance Law,* § 12.6 (6th ed. 1990)). The made-whole doctrine is a descriptive term for application of unjust enrichment. An insured should not recover more than that which fully compensates, and an insurer should not recover any payments that should rightfully go to the insured so that he or she is fully compensated. We so stated in *Bough:*

> Thus, while the general rule is that an insurer is not entitled to subrogation unless the insured has been made whole for his loss, the insurer should not be precluded from employing its right of subrogation when the insured has been fully compensated and is in a position where the insured will recover twice for some of his or her damages.

*Bough,* 310 Ark. at 28. In *Franklin, supra,* we also stated that "equity will require that the insured be made whole before the insurer's right to subrogation will arise." *Franklin,* 328 Ark. at 168 (quoting Lee R. Ross, *Couch on Insurance* § 61:20 (Supp. 1996)). The fact that Southern Farm Bureau's right to subrogation arises from contract does not give it a higher priority than Tallant's claim, and Tallant is entitled to be made whole before Southern Farm Bureau is entitled to recover anything against Key.

## Right to a Jury

Based on art. 2, sec. 7 of the Arkansas Constitution, Southern Farm Bureau asserts that it has a right to a jury trial on the issue of whether Tallant was made whole. This court has not stated definitively how the decision of whether an insured is made whole is to be decided. Southern Farm Bureau alleges that it must be given a jury trial because this case arises in tort. The circuit court found that the issue of whether a plaintiff is made whole by a settlement is an issue to be decided by the circuit court. In *Franklin, supra,* the amount of medical expenses was "undisputed." *Franklin,* 328 Ark. at 168. In *Welch, supra,* the issue of whether the insured was made whole was decided on summary judgment.

■■ In the case before this court, Southern Farm Bureau paid $2350.92 to Tallant, and Tallant had $12,200 in medical bills, but settled the claim for $9500. Therefore, because the settlement is less than the medical bills, one cannot conclude from the sums alone that Tallant was or was not made whole. Subrogation is a doctrine of equity governed by equitable principles. *Bransumb, supra; Branscumb v. Freeman,* 360 Ark. 171, 200 S.W.3d 411 (2004); *Franklin, supra; Union Nat'l Bank v. Hooper,* 295 Ark. 83, 746 S.W.2d 550 (1988); *Troyer v. Bank of DeQueen,* 170 Ark. 703, 281 S.W. 14 (1926); *Wilson v. White,* 81 Ark. 407, 102 S.W. 201 (1907). The constitutional right to a jury trial does not extend to a case in equity. *Riggin v. Dierdorff,* 302 Ark. 517, 790 S.W.2d 897 (1990). Further, the right to a jury trial extends only to those cases which were subject to trial by jury at the common law. *Drug Task Force v. Hoffman,* 353 Ark. 182, 114 S.W.3d 213 (2003). In equitable proceedings, there was no right to a jury at the common law. *Colclasure v. Kansas City Life Ins. Co.,* 290 Ark. 585, 720 S.W.2d 916 (1986). The decision on whether Tallant was made whole was properly decided by the circuit court.

## Estoppel

■■ ■■ Southern Farm Bureau argues that Tallant is estopped from asserting that he was not made whole because he settled for less than the policy limits. Southern Farm Bureau further argues that Tallant's agreement to settle for less than the policy limits amounts to an admission that he was made whole. It is the general rule that:

> no act of the insured releasing the wrongdoer from liability can defeat the insurer's rights when a release is given without the

insurer's knowledge or consent, and when the wrongdoer has full knowledge of the insurer's right of subrogation.

*Sentry*, 246 Ark. at 684. *See also Floyd v. Home Ins. Co.*, 250 Ark. 915, 467 S.W.2d 698 (1971). Southern Farm Bureau did not consent to the settlement, and rather objected, arguing that it was due a jury trial. In *Shelter Mut. Ins. Co. v. Kennedy*, 347 Ark. 184, 60 S.W.3d 458 (2001), this court considered a claim of estoppel, noted that the appellant did not establish the elements of estoppel at trial, and then held the issue was procedurally barred. Southern Farm Bureau's rights in this case arise from the equitable doctrine of subrogation. The decision of whether any party will be unjustly enriched is a decision made by the court, irrespective of assertions made by Tallant. Southern Farm Bureau wishes to prohibit Tallant from asserting that he was not made whole. That would not stop the circuit court from deciding the issue because it is an issue that must be decided by the court in making a determination on unjust enrichment. Therefore, whether Tallant subjectively asserts he is made whole is of no effect, and holding he is estopped from making the assertion would be equally of no effect.

We also note that in any event, the elements of estoppel are not met. In *Bedford v. Fox*, 333 Ark. 509, 970 S.W.2d 251 (1998), we set out the elements: (1) the party to be estopped knew the facts; (2) the party to be estopped intended that the conduct be acted on; (3) the party asserting the estoppel was ignorant of the facts; and (4) the party asserting the estoppel relied on the other's conduct and was injured by that reliance. Southern Farm Bureau knew of the facts and appeared at the hearing to oppose the motion. Reliance upon Tallant's conduct is also missing. Further injury is not shown. Presumably, in setting premiums based on risk, Southern Farm Bureau knew that such an injury might occur and under its policy it alone would have to pay.

### Allowing Southern Farm Bureau to Proceed Against Key

Southern Farm Bureau alleges that the made-whole issue does not bar it from proceeding against Key. Subrogation is the substitution of one party for another. *Welch, supra*. The party asserting subrogation is making a demand under the right of another. *Cooper, supra*. In this case, Southern Farm Bureau is asserting Tallant's right to sue Key. Southern Farm Bureau has no separate cause of action and may not split Tallant's cause of action. When the circuit court approved the settlement and made a

finding that Tallant was not made whole, Tallant's cause of action against Key was extinguished, as was any right Southern Farm Bureau had under subrogation. We affirm the finding that Southern Farm Bureau may not proceed against Key.

GLAZE and DICKEY, JJ., not participating.