J. B. RICKMAN, Jr. and WANDA RICKMAN, HIS
WIFE, AND ROBERT E. HORNER AND PATSY G.
HORNER, HIS WIFE *v.* JACK E. MOBBS AND ALICE
MOBBS, HIS WIFE

5-6155                                           490 S.W. 2d 129

Opinion delivered February 12, 1973

*J. H. Carmichael Jr.,* for appellants.

*Wayne R. Foster,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellants filed a suit to enjoin the appellees from the operation of a used car lot and real estate office on certain lots in the Holiday Park South Subdivision in Pulaski County. Neither of the appellants has ever owned any property in that subdivision. The dwelling houses owned by each of them are located in Holiday Park Subdivision, which is separated from Holiday Park South by Kiehl Avenue, a street

running east and west. A bill of assurance restricting the property in Holiday Park to residential use was approved by the Pulaski County Planning Commission. It was recorded in the Circuit Court Clerk's office on July 8, 1964, prior to the purchase of the lots on which appellants' residences are located. Subsequently, a bill of assurance restricting the use of certain lots (including those on which the businesses of appellees were located) in Holiday Park South, dated January 19, 1966, was approved by the planning commission and recorded in the clerk's office on April 8, 1966. Appellants contended that their property was damaged by the use of appellees' lots for business purposes and sought to recover damages as well as to enjoin the continued use of the property for commercial purposes.

Appellees moved for a summary judgment upon the basis of their ownership (along with their daughter and son-in-law) of all of Holiday Park South and the fact that appellants owned no property therein. Thereafter, appellants amended their complaint to allege that the use being made of the Mobbs property was in violation of the planning board rules and regulations in that the board had approved the Holiday Park South bill of assurance, that the plats of both subdivisions and the accompanying bills of assurance dedicated Holiday Drive, a street extending from the north end of Holiday Park to the south end of Holiday Park South, to be used in connection with lots restricted by the respective bills of assurance to residential uses, and that the lots in both subdivisions were purchased from a common source.

Appellees then filed a supplemental affidavit in support of their motion for summary judgment, stating that no zoning regulations or restrictions covering their property had ever been promulgated, and that Holiday Realty Company, Inc., the developer of both subdivisions, had acquired the lands comprising the respective subdivisions at different times from diffeerent owners, platted the respective tracts into lots at different times and disposed of them at different times, so that it was not the owner of either appellants' or appellees' lots at the time the appellees acquired the respective tracts owned by them in Holiday Park.

Appellees' affidavits were not controverted by counter-affidavits or other matter, prior to a hearing on the motion. The chancellor reserved a ruling, however, until evidence had been adduced on all issues except the question of damages to appellants. Appellants' attorney conceded that the statements contained in the affidavits were correct, but insisted upon offering testimony.

It was shown by witnesses that the Mobbs "mobile home" real estate office and used car lot were immediately opposite the Rickman property on Kiehl Avenue, that the Horner residence was situated nearby and that the value of both residential properties was diminished by reason of the proximity of Mobbs' commercial operations. Rickman and his wife purchased their property from Austin Wiggins on February 28, 1968. Rickman stated that he was aware of the existence of the two subdivisions, and that he relied upon the recorded bill of assurance and plat of Holiday Park South to restrict the use of the property in that subdivision to residential purposes. Patsy Horner also knew of the restrictions on use contained in the Holiday Park South bill of assurance when she purchased her property in Holiday Park in 1969 from Donald J. Roderique. Mobbs testified that he bought Holiday Park South from Holiday Realty Company on December 5, 1966, and deeded certain lots therein to his son-in-law.

After hearing all the testimony, the chancery court granted the motion for summary judgment. Appellants contend that this action was erroneous. We do not agree.

Appellants argue that they have standing to enforce the provisions of the bill of assurance covering Holiday Park South, even though they own no property in that subdivision and never have. They base their argument upon the approval of the bill of assurance by the county planning board and rely upon cases holding that owners of nearby property may challenge changes in zoning, even though they own no property in the rezoned area. Those cases have no application here. There has been no zoning of the Mobbs property so far as this record discloses. Under our statutes, approval of the bill of assurance and plat by the planning commission did nothing more than entitle the owner to place them of record. See

Ark. Stat. Ann. § 17-1106 (Repl. 1968). See also, Ark. Stat. Ann. § 19-2829 (Repl. 1968). While the county planning commission may recommend zoning of unincorporated areas as to land use, such recommendations are not binding until adopted by the county court, after a public hearing. Ark. Stat. Ann. § 17-1103 (Repl. 1968). This necessary action is not disclosed by the record.

In the absence of any zoning of the property, appellants can only prevail if their reliance upon the recorded bill of assurance pertaining to Holiday Park South gave rise to enforceable rights. In approaching this question, we must remember that the courts do not favor restrictions upon the utilization of land. *Schermer* v. *Haynes*, 248 Ark. 255, 451 S.W. 2d 445. There is no doubt that the purchaser of land covered by a bill of assurance is entitled to have the reciprocal obligations of restrictions thus established enforced against the owners and purchasers of other lands subject to the same bill of assurance. *Moore* v. *Adams*, 200 Ark. 810, 141 S.W. 2d 46; *Dillingham* v. *Kahn*, 188 Ark. 759, 67 S.W. 2d 735. But this right to enforce restrictions as to use rests upon a contractual basis imposing upon the grantor and his grantees the obligation of observing them. *Moore* v. *Adams*, supra. While the bill of assurance is only one means of establishing a restricted use in a district, the understanding of the purchaser, or even a general or common understanding, that a certain restriction applies to a section or area is not a sufficient basis for enforcing that restriction, when the understanding or belief is not founded upon a contractual obligation. *Moore* v. *Adams*, supra. While there is evidence that appellants were aware of, and perhaps relied upon, the Holiday Park South bill of assurance at the time of their purchase of lots in Holiday Park, we find nothing whatever to indicate any contractual basis for this reliance or that the bill of assurance covering the Holiday Park South subdivisision was for the benefit of Holiday Park or owners or purchasers of property therein.

In view of our disposition of this point raised by appellants, their other points for reversal are moot and the decree is affirmed.