OUACHITA TREK and DEVELOPMENT COMPANY *v.*
Lynn C. ROWE and Martha J. Rowe

99–58                                                    17 S.W.3d 491

Supreme Court of Arkansas
Opinion delivered June 1, 2000

458

*Vicki S. Cook*, Chancellor;

*Brown, Schwander, Greene & Sloan, P.L.C.*, by: *Alice Ward Greene*, for appellant.

*D. Scott Hickam*, for appellees.

TOM GLAZE, Justice. This appeal arises from a Garland County chancellor's dismissal of a lawsuit between Ouachita Trek and Development Company ("OTDC") and Lynn and Martha Rowe. The chancellor had originally granted specific performance in favor of OTDC, but after a series of attempts to close on the property failed, she dismissed OTDC's suit. For the reasons set out herein, we affirm.

In May of 1992, OTDC and the Rowes entered into an option agreement which provided for the sale of land on Blakely Mountain in Garland County owned by the Rowes in three forty-acre tracts of land, that the Rowes had not previously sold to others. This land constituted about seventy acres of land altogether. In order to extend the length of the option agreement, OTDC purchased two additional tracts of property in those three forties on July 7, 1993, on which date the parties also entered into another purchase and option agreement. This second purchase and option agreement provided for an initial term of fifteen months and was set to expire on October 7, 1994, unless OTDC exercised a provision contained in the agreement to extend the expiration of the agreement for another six months, or until April 7, 1995, during which time OTDC was to purchase an additional 2.3 acre tract of property. OTDC properly extended the expiration of the agreement

until April 7, 1995, by purchase of the additional 2.3 acres in July of 1994.

On April 7, 1995, OTDC gave notice to the Rowes that it intended to exercise its right to purchase all of the land contained in the three forty-acre tracts which the Rowes had not previously sold. The parties proceeded toward a closing on the optioned property set for July 25, 1995, but the closing did not occur. According to the Rowes, OTDC had insisted on terms that were different from those contained in the original agreement. In October of 1995, OTDC filed suit against the Rowes in Garland County Chancery Court, seeking specific performance of the purchase and option agreement and damages suffered due to the failed July 1995 closing.

The basis of the complaint was the parties' differing interpretations of several provisions of the purchase and option agreement, including the method by which OTDC could exercise the option, what acreage was to be included in the option, which properties were intended to be included in the provision allowing OTDC a first option to reacquire property previously sold by the Rowes subject to their right to reacquire, how a resale and release clause was to be interpreted and implemented, who had responsibility for the roads to the optioned property (and the extent of that responsibility), and other matters.

The case was tried before Garland County Chancellor Vicki Cook in October of 1997. On January 27, 1998, she issued a letter order in which she granted specific performance to OTDC; however, she awarded no damages or attorneys' fees. OTDC prepared a precedent, which was signed by the chancellor on March 30, 1998, and entered it on that same date. Also on March 30, a closing date was set for June 1, 1998.

On April 10, 1998, the Rowes filed a motion under Rules 52(b), 59, and 60 of the Arkansas Rules of Civil Procedure to amend the precedent, asserting that the precedent prepared by OTDC contained language that was not in the chancellor's letter order. In response, on June 15, 1998, the trial court entered an amended order, correcting the March 30 order to reflect what was contained in its original letter order.

The parties did not close on June 1, and on June 23, 1998, the Rowes filed a motion pursuant to Ark. R. Civ. P. 70, asserting that

OTDC had failed to comply with the court's orders with respect to closing and that OTDC's cause of action should be dismissed. A hearing on the motion was held on August 21, 1998, and the chancellor ordered the parties to close on September 21, 1998, or she would grant the Rowes' Rule 70 motion. On September 14, 1998, another hearing was held to discuss closing documents. OTDC filed a "Motion to Determine Closing Documents" on September 18, asking the court to determine that the mortgage and promissory note it submitted were the documents that best reflected the previous orders of the court; this order was never ruled on by the court.

Closing did not occur on September 21, and the Rowes entered a motion to dismiss on September 28. A hearing was held on October 12, at the close of which the trial court granted the Rowes' motion and dismissed OTDC's cause of action. The same day, she granted OTDC's motion for stay pending appeal on the condition that OTDC post a supersedeas bond. OTDC timely filed a notice of appeal, and now raises six points for reversal. Because we find that none of these points has merit, we affirm the chancellor's dismissal of the matter; however, we do so for a reason different from the one given by the chancellor. We discuss this point further below. In addition, the Rowes filed a notice of cross-appeal, in which they assert that this court should remand the matter to the trial court for entry of judgment in the amount of the supersedeas bond which OTDC never posted.

■ We hear chancery cases de novo on the record, but will not reverse a finding of fact by the chancellor unless it is clearly erroneous. *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000) (citing *Webber v. Webber*, 331 Ark. 395, 962 S.W.2d 345 (1998); *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993)). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Ross Explorations, Inc. v. Freedom Energy*, 340 Ark. 74, 8 S.W.3d 511 (2000). The evidence on appeal, including all reasonable inferences therefrom, and the findings of fact by a judge must be reviewed in a light most favorable to the appellee. *McKay*, 340 Ark. at 176, 8 S.W.3d at 528 (citing *Looper v. Madison Guar. Sav. & Loan Ass'n*, 292 Ark. 225, 729 S.W.2d 156 (1987)).

For its first point on appeal, OTDC argues that the trial court erred in entering an amended precedent on June 15, 1998, urging that the Rowes waived all objections to the March 30 order during the hearing held on that date. In addition, OTDC asserts that the trial court lost jurisdiction to enter a new precedent when the court failed to rule on the Rowes' April 10, 1998, motion pursuant to Rules 52, 59, and 60 within thirty days; because of this failure, OTDC contends that the Rowes' motion was deemed denied on May 10, 1998.

The basis of the Rowes' motion was a discrepancy between the language of the precedent prepared by OTDC and that of the letter order written by Chancellor Cook. The letter order, dated January 27, 1998, ordered the Rowes "to bring the roads to these three tracts within a reasonable level or performance on or before 90 days after the closing *by taking all steps necessary for the roads to be paved and accepted by the County.*" (Emphasis added.) The precedent prepared by OTDC, however, read that the Rowes had "responsibility for maintaining and improving the roads . . . and shall have 90 days from January 27, 1998, *to improve and pave these roads* up to the point sufficient to comply with the Garland County requirements . . . " (Emphasis added.)

Pursuant to Ark. R. Civ. P. 60, the Rowes' motion alleged mistake or oversight in the preparation of the precedent, and asked the trial court to amend the precedent to delete any language requiring them to pave the roads. Rule 60(b), at the time this case was originally heard, provided as follows:

> To correct any error or mistake or to prevent the miscarriage of justice, a decree or order of a . . . chancery . . . court may be modified or set aside on motion of the court or any party, with or without notice to any party, within ninety days of its having been filed with the clerk.

Ark. R. Civ. P. 60(b) (1999).[1]

■ Thus, corrections of mistakes or errors, or efforts to prevent the miscarriage of justice, may be made within ninety days of

---

[1] Rule 60 was amended in 2000 to reflect this court's decision in *Lord v. Mazzanti*, 339 Ark. 25, 2 S.W.3d 76 (1999), in which we held that clerical errors could be corrected by the court "at any time." Corrections of errors or mistakes or to prevent the miscarriage of justice must still be made within ninety days.

the original order. The amended order in the instant case was entered on June 15, 1998, less than ninety days (actually, seventy-seven days) from the original order on March 30, 1998. Because OTDC attempted to mislead both the trial court and the Rowes by inserting the improper language about paving the roads into the precedent it prepared, the court properly amended the order under Rule 60 to prevent the miscarriage of justice.

■ OTDC raises the additional argument that the Rowes waived any objection to the language in the precedent when they announced "no objections" to the precedent at the March 30 hearing. However, one cannot waive something that one is unaware of. The Rowes never agreed to pave the roads over the property, yet OTDC inserted the language quoted above into the precedent. At the March 30 hearing, the trial court asked counsel for OTDC if he had tracked the language of the letter opinion; the attorney responded that he had. When asked if he had any objections, counsel for the Rowes stated that "if [the precedent is] the same one that I've seen previously," he had none. Counsel for OTDC stated that "[t]he only thing that was sent was a new signature page which allows you to fill in the date for it because that had been left off." This material misrepresentation prevents OTDC from arguing waiver at this time.

■ Thus, the chancellor was correct when she entered an amended order that properly stated that the Rowes only had to maintain the roads until the county would accept them for paving, correcting the order entered on March 30 which ordered the Rowes to pave the roads. Rule 60 permits such oversights to be corrected within ninety days; this amended order was entered in seventy-seven days, well within the time allotted.

OTDC's second point on appeal is that the trial court erred in its interpretation of the resale and release clause in the purchase and option agreement. The clause in question reads as follows:

> It is the understanding of the parties that OTDC may hold the property described herein . . . for resale to the public. ROWE agrees to accommodate OTDC in its best efforts to resale [sic] any and all property South of Heritage Trail, and accordingly, after exercising the option, ROWE agrees to release their lien upon any portion of the property contracted for sale to third parties upon the payment of FIVE THOUSAND AND NO/100 DOLLARS

($5,000.00) per acre. The parties further agree to a payment or reduction of the principal amount owed for that portion.

In her June 15, 1998, amended order, the chancellor interpreted this language to mean that "the down-payment, once paid by [OTDC], shall operate to provide security to defendants for the entire transaction. After the down-payment, any payment of $5,000.00 or more will entitle the plaintiff to a release of lien at the rate of $5,000.00 per acre as stated in the agreement." At the August 21, 1998, hearing, the court found that "the monthly payments would be made and the $5,000.00 would be additional if there was going to be a release." Reiterating her order in a September 15, 1998, letter, she wrote that "[a]fter the down payment, any payment of $5,000.00 or more will entitle [OTDC] to a release of lien at the rate of $5,000.00 per acre as stated in the agreement." Thus, her conclusion was that payments of $5,000.00 beyond the monthly principle and interest payments, after the down payment was made, would operate to do two things: 1) reduce the principle amount owed, and 2) entitle OTDC to a release of one acre of land from the lien retained by the Rowes.

■ OTDC contends that the trial court's interpretation is erroneous and argues here, as it did to the court below, that "any payment" of $5,000.00 includes the monthly installments and should warrant a release of lien. In addition, OTDC urges that the trial court's "verbal interpretation" of this language at the August 21 hearing amended its earlier ruling. However, we do not find this argument persuasive. The chancellor's interpretation of the resale and release clause — that any additional payment of $5,000.00 over the monthly principle and interest payment would release an acre from the lien — is a common-sense one, and her statements at the August hearing merely clarified her earlier written ruling. We cannot say that her decision was clearly erroneous, and thus, we do not reverse on this point.

For its third point on appeal, OTDC argues that the trial court erred by failing to include certain property, referred to by the parties as the "church property," as part of the property to be acquired pursuant to the purchase and option agreement. The purchase and option agreement contained language to the effect that the Rowes had reserved rights to reacquire property in the area previously sold by them and had agreed to assign those rights to

OTDC, in the event OTDC exercised its purchase option. The property that OTDC contended came within this reservation of rights was a ten-acre tract previously conveyed by gift from the Rowes to their church.

After hearing testimony and reviewing the documentary evidence presented during the trial, the chancellor found that the church property was not part of the acreage included in the purchase and option agreement. First, she found that the property had not previously been sold by the Rowes; rather, it had been a gift to their church for which no consideration had been paid on its return to the Rowes. In addition, she noted that the legal description of the land in the agreement provided for 61.65 total acres, more or less, which, when multiplied by the resale and release price of $5,000.00 per acre, was roughly consistent with the total agreed purchase price of $300,000.00. In addition, she pointed to exhibits which did not depict the church property on them. Testimony from the Rowes, including Martha Rowe's diary, also supported their contention that the church property was not shown on the plat attached to the parties' agreement; nor did the contract refer to the property directly or indirectly. Based on this evidence, the chancellor concluded that the contract did not include the church property.

██ The chancellor's decision appears well-founded on the testimony and evidence presented at trial. Especially convincing is the fact that the property to be sold encompassed approximately sixty acres and was to be sold for $300,000.00 (or 60 x $5,000.00 per acre, the value assigned in the resale and release clause). Had the ten-acre church property been included, the sale price should have been roughly $50,000 higher. This court has repeatedly held that it will not reverse a chancellor's findings of fact unless they are clearly erroneous; in this case, given the chancellor's superior position to view all the evidence, it cannot be said that she clearly erred.

█ OTDC's fourth argument on appeal is that the trial court erred in failing to require the Rowes to pave all of the roads to the optioned property, or in the alternative, in failing to award damages based on the Rowes' failure to pave the roads. First, OTDC relies on the March 30, 1998, order it prepared in which the Rowes were given ninety days from January 27, 1998, "to improve and pave those roads." However, this was the language that the trial court

properly corrected by removing it in the June 15 amended order, and OTDC cannot rely on it now.

■ Second, OTDC urges that even under the June 15, 1998, order, the Rowes were directed to bring the roads to the three tracts of land "within a reasonable level of performance on or before ninety days after the closing *by taking all steps necessary for the roads to be paved and accepted by the county*" (emphasis original in OTDC's brief). Basically, OTDC claims that the Rowes had not done what they could to get the county to accept the roads. On this point, however, the chancellor ultimately decided that since there had been no closing, and thus no way to determine when ninety days from closing would be, this issue was not ripe. For that reason, she refused to award damages to OTDC. Again, we cannot say that this decision was clearly erroneous.

The fifth point of OTDC's argument is that the trial court erred by denying its attorneys' fees pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1999).[2] In her order, the chancellor noted that the decision whether to award attorneys' fees is within the court's discretion, and she found that since neither party was entitled to damages, both parties were to be responsible for their own attorneys' fees.

■ In *Chrisco v. Sun Industries*, 304 Ark. 227, 800 S.W.2d 717 (1990), this court was very clear on the subject of attorneys' fees and a trial court's discretion with respect to whether or not to grant them. The *Chrisco* court stated the following:

> Our general rule relating to attorney's fees is well established and is that attorney's fees are not allowed except when expressly provided for by statute.
>
> [Ark. Code Ann. §] 16-22-308 addresses attorney's fees in certain civil actions and provides in pertinent part as follows:
>
>> In any civil action to recover on . . . breach of contract, . . . the prevailing party *may* be allowed a reasonable attorney fee to be assessed by the court and collected as costs.

---

[2] OTDC's point heading on this issue mentions Ark. Code Ann. § 16-22-302, but their brief assigns error only under § 16-22-308. Thus, our analysis is pursuant to this latter section.

(Emphasis added.)

The word "may" is usually employed as implying permissive or discretional, rather than mandatory, action or conduct and is construed in a permissive sense unless necessary to give effect to an intent to which it is used. We find, within the context in which the word "may" is employed in this case, that section 16-22-308 is permissive and discretional with the trial court.

\* \* \* \*

We have also previously noted that due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we usually recognize the superior perspective of the trial judge in assessing the applicable factors. Accordingly, an award of attorney's fees will not be set aside absent an abuse of discretion by the trial court.

*Chrisco*, 304 Ark. at 229-30, 800 S.W.2d at 718 (internal citations omitted).

■ The chancellor was involved in this lawsuit from its beginning, and no doubt is intimately familiar with the performance and quality of service rendered by counsel for both parties. Her decision was certainly based on her familiarity with the case, and OTDC has not proven that she abused her discretion in refusing to award fees.

OTDC's final point on appeal is that the trial court erred by dismissing with prejudice its entire cause of action after the closing failed on September 21, 1998. The chancellor purported to dismiss the action pursuant to the Rowes' motion under Ark. R. Civ. P. 70. The language of Rule 70, however, does not provide for dismissal. That rule reads as follows:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act, and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. . . . The court may also in proper cases adjudge the party in contempt.

■ Although Rule 70 does not provide a mechanism for dismissal, we nonetheless affirm the chancellor's decision to dismiss OTDC's cause of action for another reason. Here, OTDC sought

specific performance, an equitable remedy. *See Bharodia v. Pledger*, 340 Ark. 547, 11 S.W.3d 540 (2000); *Hardy Constr. Co. v. Arkansas State Hwy. & Transp. Dep't.*, 324 Ark. 496, 922 S.W.2d 705 (1996). However, one of the most basic maxims of equity is that he who seeks equity must do equity. *See Cardiac Thoracic & Vascular Surgery, P.A. v. Bond*, 310 Ark. 798, 840 S.W.2d 188 (1992).

▆▆▆▆▆ Arkansas cases extending back more than seventy years have recognized that a party who breaches a contract cannot compel specific performance of that same contract by the other party. *Moody v. Kahn*, 174 Ark. 1072, 298 S.W. 353 (1927). Here, OTDC continually insisted on improper language, not only in the precedent it prepared, but also in the closing documents it tried to have the Rowes sign. With OTDC, the chancellor was confronted with a party who sought specific performance of the parties' agreement, but OTDC repeatedly rejected the chancellor's interpretations of the agreement that she deemed were necessary to carry it out. Thus, the chancellor in the instant case was correct to dismiss OTDC's suit for specific performance. In so holding, we adhere to the recognized rule that this court will affirm a trial court when it has reached the right result, even if for the wrong reason. *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999) (citing *Malone v. Malone*, 338 Ark. 20, 991 S.W.2d 546 (1999); *Dunn v. Westbrook*, 334 Ark. 83, 971 S.W.2d 252 (1998); *Marine Servs. Unlimited, Inc. v. Rake*, 323 Ark. 757, 918 S.W.2d 132 (1996)). In sum, because the circumstances in this case do not support the granting of specific performance, we agree that the chancellor correctly dismissed OTDC's cause of action.

We next turn to the Rowes' cross-appeal, in which they argue that we should remand the matter to the lower court for entry of a judgment in the amount of $60,000.00, the amount of the supersedeas bond OTDC was to post with the chancery clerk on or before October 26, 1998 — two weeks after the trial court's order dismissing OTDC's cause of action. The trial court's order directed OTDC to submit its surety bond pertaining to its appeal or dismiss the appeal forthwith. OTDC never posted a surety bond, nor did the Rowes object to or move to dismiss OTDC's appeal.

▆▆▆ On appeal, OTDC argues that there was no necessity for it to post a supersedeas bond in order for it to maintain its interests in the property at issue. OTDC contends that its interests were

sufficiently protected by having filed a *lis pendens* when it filed its original action. The Rowes offer no reason why they did not move to enforce OTDC's posting of a bond, but instead, ask that we remand the matter for the trial court to enter a judgment for $60,000.00 — the bond amount that was to be posted by October 26, 1998. The Rowes cite no legal authority that supports their proposition, and we have stated on occasions too numerous to count that we will not consider the merits of an argument if the appellant fails to cite any convincing legal authority in support of that argument, and it is otherwise not apparent without further research that the argument is well taken. *Matthews v. Jefferson Hospital Ass'n*, 341 Ark. 5, 14 S.W.3d 482 (2000).

Rule 8(c) of the Rules of Appellate Procedure — Civil states that whenever an appellant desires a stay on appeal, he or she shall present to the court for its approval a supersedeas bond which shall have such surety or sureties as the court requires. Rule 8(c) further provides that the bond shall be to the effect that appellant shall pay to appellee all costs and damages that shall be affirmed against appellant on appeal; or if appellant fails to prosecute the appeal to a final conclusion, or if such appeal shall for any cause be dismissed, that appellant shall satisfy and perform the judgment, decree, or order of the trial court.

Here, while OTDC initially requested a stay pending an appeal, it later decided no stay was needed to protect its interests. As previously noted, once OTDC chose not to seek a stay under Rule 8, the Rowes took no action when the October 26, 1998, date for posting bond passed. We believe the circumstances and the argument put forth here by the Rowes fall short of showing their entitlement to a remand and entry of judgment.

For the above reasons, the order of the chancellor dismissing OTDC's cause of action is affirmed, and the cross-appeal of the Rowes is dismissed.

IMBER, J., not participating.