Tony and Karen CAVALIERE *v.* David SKELTON,
James Sanders, Tiffani and Damon Jones, and
Danny Johnson

CA 00-772                                          40 S.W.3d 844

Court of Appeals of Arkansas
Division I
Opinion delivered April 4, 2001

*Turberville Law Firm, P.A.,* by: *Richard N. Turberville,* for appellants.

*Boyd Tackett, Jr.,* for appellees.

JOSEPHINE LINKER HART, Judge. Appellants, Tony and Karen Cavaliere, kept Bengal tigers at their residence in Treasure

Hills No. 1 subdivision in Faulkner County. Appellees filed a complaint asserting that as a result of keeping the tigers, appellants were violating a restrictive covenant contained in the subdivision's bill of assurance that only allowed the keeping of household pets. The chancellor granted appellees' motion for summary judgment, and appellants now argue on appeal that the judgment was in error because there remained genuine issues of material fact. We affirm.

On review of the granting of a motion for summary judgment, we ask whether the evidence presented by the movant left a material question of fact unanswered. *See Welch Foods, Inc. v. Chicago Title Ins. Co.*, 341 Ark. 515, 518, 17 S.W.3d 467, 469 (2000). The proof submitted is viewed in a light most favorable to the party resisting the motion. *Id.* If the moving party establishes a *prima facie* entitlement to summary judgment by affidavits or other supporting documents or depositions, then the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.*

Attached to appellee's complaint was a copy of the bill of assurance, filed on June 6, 1972, in Book 203, at page 784, in the Faulkner County real estate records, regarding the Treasure Hills subdivision. The bill of assurance stated in part that "[n]o animals, livestock, or poultry shall be raised or kept on any building site; but dogs, cats, or other household pets may be kept, provided they are not kept for any commercial purpose." Appellees Jan Sanders and David Skelton asserted in their complaint that they and appellants resided in Treasure Hills No. 1 subdivision, which appellees further asserted was covered by the bill of assurance. Appellants pleaded in their answer the affirmative defenses of "laches, estoppel, and statute of limitations" and further stated that "no irreparable harm is likely to occur in view of the fact that the tigers have been present on the property since March or April, 1995." In their response to the amended complaint, appellants admitted owning and residing on a lot in Treasure Hills No. 1 subdivision.

Appellees moved for summary judgment, claiming that appellants' keeping of Bengal tigers in Treasure Hills No. 1 subdivision was in violation of the restrictive covenant contained in the bill of assurance. Appellees also attached affidavits asserting that Bengal tigers are not household pets. Appellants argued in their response that "violations exist throughout the Treasure Hills Subdivision to such a degree that the covenants are no longer enforceable." Appellants noted that horses were being kept on three separate parcels within the subdivision. Appellees, however, then expressed their

belief that the three parcels noted by appellants were located in Treasure Hills No. 3 subdivision, which was covered by a separately recorded bill of assurance that specifically permitted the keeping of horses and cows. The chancellor granted appellees' motion for summary judgment.

Appellants first argue that appellees failed to establish that the Treasure Hills bill of assurance covered appellants' property. They note that the bill of assurance only contained a metes-and-bounds property description of the subdivision and argue that appellees did not present a legal description of appellants' property to establish that the property was within the subdivision. Appellants further argue that there was no proof that they were "fully aware" of the restrictive covenant when they purchased the property.

■ ■ A purchaser of land covered by a bill of assurance is entitled to have the reciprocal obligations of restrictions enforced against the owners and purchasers of other lands subject to the same bill of assurance. *See Rickman v. Mobbs*, 253 Ark. 969, 972, 490 S.W.2d 129, 131 (1973). Moreover, one taking title to land with notice that it is subject to an agreement restricting its use will not be permitted to violate its terms. *See Harbour v. Northwest Land Co.*, 284 Ark. 286, 288, 681 S.W.2d 384, 385 (1984). Further, enforcement of restrictive covenants is controlled by Ark. Code Ann. § 18-12-103 (1987), which provides that "[n]o restrictive or protective covenants affecting the use of real property nor any instrument purporting to restrict the use of real property shall be valid or effective against a subsequent purchaser or owner of real property unless the restrictive or protective covenants or instrument purporting to restrict the use of the real property is executed by the owners of the real property and recorded in the office of the recorder of the county in which the property is located."

■ In the case at bar, appellants admitted in their pleadings that their residence is situated in Treasure Hills subdivision No. 1. Appellees presented a duly recorded bill of assurance containing a restrictive covenant that precluded the keeping of animals other than dogs, cats, or other household pets within the Treasure Hills subdivision. Because the bill of assurance was recorded, the restrictive covenant was valid and enforceable against property owners within the Treasure Hills subdivision. Thus, appellants' property, which was located in the Treasure Hills subdivision, was subject to the restrictive covenant.

■ For their second point on appeal, appellants note that a provision found in the bill of assurance sets out a time period during which persons may seek enforcement of a restrictive covenant governing the construction of buildings on property within the subdivision. They argue that the time for seeking enforcement of that restrictive covenant had passed. We simply note that this issue was not raised before the chancellor, and we do not address arguments on appeal that were not raised below. *See Holloway v. Stuttgart Reg. Med. Spec. Ctr.*, 62 Ark. App. 140, 142, 970 S.W.2d 301, 302 (1998).

Next, appellants argue that the doctrine of laches precludes enforcement of the restrictive covenant because they presented evidence that horses were maintained on at least three different parcels of property within the Treasure Hills subdivision. They further argue that there remains a material issue of fact as to which bill of assurance covered those properties.

■ "The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party." *Goforth v. Smith*, 338 Ark. 65, 77, 991 S.W.2d 579, 586 (1999). Further, "[l]aches requires a demonstration of prejudice to the party alleging it as a defense resulting from a plaintiff's delay in pursuing a claim." *Goforth*, 338 Ark. at 78, 991 S.W.2d at 587.

■ Even assuming that the three properties on which horses were kept were subject to the restrictive covenants governing the Treasure Hills subdivision, appellants failed to plead or affirmatively assert any reliance on other subdivision residents' acquiescence to the asserted violations when appellants began to maintain tigers on their own parcel. In other words, appellants made no showing that they kept tigers on their parcel because other subdivision residents kept horses. Likewise, appellants failed to provide any evidence of the date either they or appellees acquired knowledge of such violations, proof of which is necessary to establish the reliance required to prove their affirmative defense of laches. Given this absence of proof, we cannot say that the chancellor erred in finding that the doctrine of laches is inapplicable and that there was no remaining material issue of fact.

For their fourth and final point, appellants, citing the doctrines of estoppel and waiver, contend that appellees were barred from seeking enforcement of the restrictive covenant because they failed

to seek enforcement in a timely manner, specifically, when appellants began construction on the property and during the four years prior to the commencement of appellees' lawsuit. Appellants conclude that there remain material issues of fact underlying their defense of estoppel, specifically: (1) "ignorance of [appellants] in the truth of facts in question"; (2) "conduct of [appellees] in not enforcing the covenants as required before completion of construction or otherwise complaining which misled [appellants]"; (3) appellants' "reliance upon the conduct of [appellees] in housing the tigers and expending research funds for four years"; and (4) "prejudicial change of position by [appellants] in completing construction of the research habitat as a result of that reliance."

■ ■ Waiver is the voluntary abandonment or surrender by a capable person of a right known to him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. *See Goforth*, 338 Ark. at 77, 991 S.W.2d at 586. In addition, the doctrine of equitable estoppel has four requirements: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his or her conduct be acted on or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the latter must be ignorant of the true facts; and (4) the latter must rely on the former's conduct to his or her injury. *See Rasberry v. Ivory*, 67 Ark. App. 227, 230, 998 S.W.2d 431, 433 (1999).

■ Appellants misunderstand the nature of a summary-judgment motion. While appellants affirmatively pleaded "laches, estoppel, and statute of limitations," they failed to present to the chancellor any evidence to support the invocation of the affirmative defenses they listed in their answer. Once the movant makes a *prima facie* showing of entitlement to a summary judgment, the party opposing the motion must meet proof with proof and demonstrate the existence of a material issue of fact. *See, e.g., Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 569, 11 S.W.3d 531, 536 (2000). Appellants' argument that there remains a material issue of fact because they were unable to present evidence regarding these matters simply begs the question. Their obligation was to meet proof with proof when responding to the summary judgment motion, and appellants failed to present such evidence. Thus, we cannot conclude that an issue of material fact remained.

Affirmed.

PITTMAN and VAUGHT, JJ., agree.