## Margie LINEBERRY v.
## RILEY FARMS PROPERTY OWNERS ASS'N

CA 05-399                                          236 S.W.3d 534

### Court of Appeals of Arkansas
### Opinion delivered May 24, 2006

*Terrence Cain*, for appellees.

*McCracken Law Firm*, by: *JoAnne M. McCracken*, for appellant.

LARRY D. VAUGHT, Judge. Margie Lineberry appeals from a jury verdict finding that she violated two restrictive cov-

enants contained in her residential subdivision's bill of assurance. She also appeals the trial court's award of $22,989.70 in attorneys' fees and $382.75 in costs to appellee Riley Farm Property Owners Association. We affirm.

In April 2004, Lineberry purchased property in the Riley Farm subdivision in Fort Smith, Sebastian County, Arkansas. Prior to Lineberry moving into the subdivision, the developer of Riley Farm filed a bill of assurance with the office of the recorder of Sebastian County. The bill of assurance contained a number of restrictive covenants, two of which are relevant to the instant case. The first covenant prohibited any resident of Riley Farm from keeping "cattle, swine, poultry, fowl, wild animals[,] or exotic animals in the Addition." The second required that "[p]lans for all fencing, whether on lot lines or surrounding patios, pools, barns[,] or other areas of the lot must be submitted to, and approved by, the Architectural Control Committee prior to the construction thereof." This covenant further provided that if the Committee did not approve or disapprove a fence plan within fourteen days of its submission, the plan was deemed approved, and the Association's resolution of the dispute "shall be binding" unless its resolution was arbitrary and capricious.

Shortly after Lineberry moved into the subdivision, members of the Association discovered that she kept a bobcat at her residence in the subdivision. On May 27, 2004, the Association sent Lineberry a certified letter informing her that keeping a bobcat at her residence violated the restrictive covenant's prohibition on wild or exotic animals and that she needed to remove it. Lineberry never retrieved the letter from the post office.

On May 21, 2004, Lineberry faxed a letter and a drawing to Lucy Wilkes, office manager for the Association, requesting approval of a plan to erect a fence around her home. After receiving the fax, Wilkes placed a stamp on Lineberry's letter that read "APPROVED," with two blank lines underneath the word. The blank lines were provided for the approving signatures of two Commission members, which were required for fence construction in the subdivision. In response to the request, on June 1, 2004, Patrick Mickle, the Commission's chairman, made notations on the drawing submitted by Lineberry highlighting aspects of her fence construction plan that did not comply with the Riley Farm covenants. Lineberry's faxed notice never received the requisite signatures.

On June 3, 2004, Wilkes spoke with Lineberry by telephone and informed her that her fence application had not been approved and that Association members wanted her to remove the bobcat from the subdivision. The following day, Wilkes and Lineberry met in person to discuss the fence and the bobcat. During this meeting, Wilkes retrieved a copy of the May 27, 2004, certified letter the Association sent Lineberry, read it to her, and encouraged her to pick up the copy waiting for her at the post office. Lineberry never picked up the letter, continued to house the bobcat, and began building her fence.

On June 15, 2004, Roy Vanderpool, a member of the Committee, visited Lineberry's home and told her that the fence she was building violated the subdivision's restrictive covenants. Lineberry responded that she believed her construction plan had been approved. Vanderpool then contacted Wilkes to clarify the situation. Wilkes confirmed that Lineberry's plan had not been approved. Lineberry indicated that she was willing to work with the Committee to bring her fence into compliance. Vanderpool and another member of the Committee, John Callaher, drafted an agreement stating that Lineberry could build a fence but that the fence had to comply with the "set-back line" provision of the covenants. Vanderpool and Callaher signed off on the agreement, and Lineberry committed to comply with the agreement, but instead, continued to build her fence according to her original construction plan.

On July 23, 2004, the Association filed a complaint in Sebastian County Circuit Court. The complaint sought to have Lineberry remove her bobcat from the subdivision and either remove the fence she had built or bring it into compliance with the covenant. The case was tried before a jury on December 20 and 21, 2004. The jury returned a unanimous verdict in favor of the Association on the question of whether Lineberry's keeping of a bobcat in the subdivision violated the terms of the covenant. By a vote of eleven-to-one, the jury returned a verdict in favor of the Association on the question of whether Lineberry's fence violated the covenants. The trial court entered judgment in favor of Riley Farm on January 3, 2005. On January 6, 2005, the Association filed a motion requesting that Lineberry pay the costs and attorneys' fees it incurred litigating the case in accordance with the fee provision contained in its bill of assurance. On January 20, 2005, the trial

court ordered Lineberry to pay $22,989.70 in attorneys' fees and $382.75 in costs. It is from this judgment and order that Lineberry appeals.

However, after her appeal was lodged with our court, on February 18, 2005, Lineberry sold her home in Riley Farm. At this time Lineberry had not paid the judgment entered against her; therefore, the Association initiated a garnishment proceeding. On April 22, 2005, Lineberry paid the $23,372.45 in fees and costs that the court had ordered her to pay. On April 28, 2005, the Association filed a motion to dismiss Lineberry's appeal claiming that because Lineberry no longer lived in Riley Farm and had voluntarily paid the judgment against her, the issue on appeal was moot. On May 25, 2005, in an 8-4 decision, our court voted to deny the Association's motion to dismiss the appeal. We are mindful of this decision and reach the same conclusion.

If an appellant voluntarily pays a judgment, the appeal from that judgment would be moot, but if the payment is involuntary, an appeal would not be precluded. *DeHaven v. T&D Dev. Inc.*, 50 Ark. App. 193, 901 S.W.2d 30 (1995). We are satisfied that once the writ of garnishment was filed, Lineberry did not "voluntarily" pay the attorneys' fees. Further, because Lineberry's economic interests were impaired, she has standing to pursue the appeal. *Forrest Constr., Inc. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001).

Turning to the merits of appeal, we consider Lineberry's argument that the trial court erred by refusing to give jury instructions that she had proposed, which set out a test for determining whether an animal should be considered wild. The proffered instructions stated:

> An individual animal may be domesticated even where the species of animal is commonly wild. The test to determine whether an individual animal of a species is domesticated is whether:
>
> 1) The individual animal has become personal property, with someone who claims title and full ownership rights.
>
> 2) The owner or keeper has exercised such training and control over the animal that it may be considered tame.
>
> . . . .
>
> An individual animal may be domesticated even where the species of animal is commonly wild. A wild animal is one of an untamed disposition; living in a state of nature.

> A domesticated animal is one which is tamed and is habituated to live in or about the habitations of men, or such as to contribute to the support of a family.

Lineberry argued below, as she does on appeal, that the jury should have been instructed that animals normally living in the wild could be domesticated and wildness should be determined on an individual basis. Lineberry also contends that when the trial court denied the Association's partial-summary-judgment motion, wherein it sought a ruling that a bobcat is a wild animal, the court obligated itself to her individual wildness theory — and the jury instructions she had proffered — because the ruling was in effect a rule of law.

At the outset, we note that the trial court's denial of the Association's summary-judgment motion is not the same as a ruling on the wildness issue. In its consideration of the Association's motion, the trial court made no findings of fact or conclusions of law. The order simply stated that a genuine issue as to a material fact exists. The trial court could, therefore, consider any proposed instructions on the issue. The trial court was presented with two proposed jury instructions regarding the definition of wild and domestic animals — the one outlined above, and an instruction offered by the Association that was based on the *Restatement (Second) of Torts* § 506 (1977)[1] that read:

> Ladies and gentlemen, you are instructed that a wild animal is an animal that is not by custom devoted to the service of mankind at the time and the place in which it is kept. A domestic animal is an animal that is by custom devoted to the service of mankind at the time and in the place in which it is kept.

As a matter of law, litigants are entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support it. *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003). However, a trial court's refusal to give a

---

[1] The *Restatement (Second) of Torts* § 506 (1977) defines a wild animal as follows:

(1) A wild animal as the term is used in this Restatement is an animal that is not by custom to the service of mankind at the time and in the place in which it is kept.

(2) A domestic animal as that term is used in this Restatement is an animal that is by custom devoted to the service of mankind at the time and in the place in which it is kept.

proffered instruction will not be reversed unless there was an abuse of discretion. *Barker v. Clark*, 343 Ark. 8, 33 S.W.3d 476 (2000).

■ Here, the restatement-based instruction given by the court is supported in the law and the evidence presented at trial. *See Cavaliere v. Skelton*, 73 Ark. App. 188, 40 S.W.3d 844 (2001) (holding that a couple keeping Bengal tigers at their residence violated a restrictive covenant that only allowed the keeping of household pets). The Association's expert, Dr. Gwen Reeder (a Fort Smith veterinarian), testified that a bobcat is a wild animal — even if raised in captivity. She further noted that the United States Department of Agriculture, the Arkansas Game and Fish Commission, the American Veterinary Association, dictionaries, and legal scholars all define a bobcat as a wild animal. There was no evidence contradicting Dr. Reeder's assessment. Because Lineberry failed to prove that her instruction was supported by the law or evidence presented at trial, it cannot be said that the trial court abused its discretion in its failure to give the instruction.

Next, Lineberry argues that there was insufficient evidence for the jury to find that the Commission disapproved her request to erect a fence around the front of her home. However, this argument is not preserved for review because Lineberry failed to move for a directed verdict on this issue at the close of all evidence. Ark. R. Civ. P. 50(e). In jury trials, if a party fails to move for a directed verdict at the conclusion of all the evidence because of insufficiency of the evidence, that party waives any question pertaining to the sufficiency of the evidence to support the jury verdict. *Id.* Here, not only did Lineberry fail to move for a directed verdict, she affirmatively stated that she believed that "there was enough of a factual dispute for the fence issue to get to the jury."

Finally, Lineberry argues that the trial court erred in its award of attorneys' fees and costs to the Association as the prevailing party in this matter. An award of attorneys' fees will not be set aside absent an abuse of discretion by the trial court. *Ouachita Trek & Dev. Co. v. Rowe*, 341 Ark. 456, 17 S.W.3d 491 (2000). When reviewing a trial court's decision to award fees, due regard shall be given to the trial court's intimate acquaintance with the record and the quality of service rendered. *Id.*

In its order, the trial court noted that it had considered the fee-award guidance enunciated in *Chrisco v. Sun Industries*, 304 Ark. 227, 800 S.W.2d 717 (1990), and had based its decision on the factors outlined in the case, which include the experience and

ability of the attorney, the time and labor required to properly perform the legal service, the novelty and difficulty of the issue involved, the time involved in the case and the obtained result, the customary fee charged in the locality for similar services, and the time limitation imposed by the client or the circumstances. After considering the so-called *"Chrisco* factors," the trial court awarded a total sum of $22,989.70 in attorneys' fees. The court went on to note that, although the Association asked for costs in the amount of $6,195.16, only $382.75 worth were authorized by Rule 54 of the Arkansas Rules of Civil Procedure — a $100 filing fee, a $50 service fee, $72.75 for subpoena service witness fee and mileage, and $60 in witness fees for two other witnesses.

■ Here, based on the trial court's specific reference to the *Chrisco* opinion and its consideration of the guiding factors cited in the case, its reliance on Ark. Rule Civ. P. 54 as the basis for its costs award, and the high degree of deference we afford the trial court in the determination of reasonable attorneys' fees, we find no abuse of discretion. We are further satisfied that this case does not present a scenario of the trial court abdicating its responsibility and mechanically awarding fees to the prevailing party.

Affirmed.

HART and ROAF, JJ., agree.