The Honorable Randy Laverty State Senator Post Office Box 303 Jasper, AR 72641-0303
Dear Senator Laverty:
I am writing in response to your request for an opinion on the following questions, which are restated and answered in the order presented:
Question 1 — Is a local planning commission (Holiday Island PlanningCommission), a private Arkansas corporation, authorized to issue finesor penalties for alleged violations of local building standards orcodes?
 (a) If the planning commission is not empowered with such authority yet persists in levying and collecting such fines, after being advised that they have no authority, can the members of the planning commission be held criminally liable for such actions?
 (b) If the planning commission is not empowered with such authority are the members of such commission liable for the return, refund or reimbursement of any and all fines collected to date?
Although you do not say so directly in your request, I assume from the reference to "covenants of the development" in the following Question 2 that the above questions pertain to privately developed property that is subject to duly recorded restrictive or protective covenants. Seegenerally A.C.A. § 18-12-103 (Repl. 2003) and Knowles v. Anderson,307 Ark. 393, 821 S.W.2d 466 (1991). I further assume that the "local building standards" or "codes" at issue are not municipal *Page 2 
regulations imposed under state planning and zoning laws,[1] but instead arise out of recorded land agreements or other private covenants or documents evidencing the contractual obligations of the property owners. Although I have no information regarding the referenced "planning commission," other than your statement that it is a "private Arkansas corporation," this body presumably was formed under the authority of such private instruments.
In response to your questions involving the authority of this "local planning commission," therefore, it appears that resolution of these issues will require reference to documents evidencing the private property owners' contractual rights and obligations. State law to my knowledge establishes no general statutory procedures governing the enforcement of covenants or other private agreements affecting the use of real property. I am consequently unable to answer these questions. I cannot, in my capacity as Attorney General, undertake the necessary document review in this regard. Such matters ordinarily fall outside the scope of an Attorney General opinion, which must be focused upon questions involving the interpretation of state law. I am specifically prohibited, moreover, from engaging in the private practice of law. A.C.A. § 25-16-701 (Repl. 2002).
Question 2 — In referencing AG opinion # 2005-132, can the board ofcommissioners of a Suburban Improvement District (SID) act as a privateproperty owner in filing a lawsuit against another property owner in theSID to force compliance with local planning commission codes if thecovenants of the development state that any "lot owner" of thedevelopment can take such action?
I cannot opine regarding the potential status of a suburban improvement district (SID) board as a private property owner in light of any such covenants. This question will, again, require consideration of instruments relating to privately developed lands, as well, perhaps, as other surrounding circumstances. I cannot opine on such factual matters, which are governed by private contract rather than state statute.
With regard to the opinion you have referenced, Op. Att'y Gen.2005-132, I do not believe that opinion has any bearing on the above question concerning private covenants evidencing the contractual rights and obligations of property owners. Opinion 2005-132 was issued by my predecessor in response to a previous request *Page 3 
from you regarding the authority of a SID to take action with respect to, inter alia, building permits and standards for planning and zoning. There was no reference in that request to contractual covenants. I should emphasize that I am not opining herein one way or another on the above question. I am simply noting that Op. 2005-132 appears to be inapposite.
Question 3 — If the streets and roadways of a SID are not constructedplat [sic] in the physical design or dimensions as described and drawnon the original plot [sic] filed with the county and approved, at thetime of such filing, by all state boards (State Fire Marshall), is theboard of commissioners of the SID responsible for the correction of suchdiscrepancies, particularly if these variations place these streets innon-compliance with State Fire Code requirements?
 (a) If these deficiencies in the street construction impacts, or more specifically impairs, fire protection, is it the responsibility of the SID to notify the office responsible for the classification for purpose of setting insurance rates for the SID?
 (b) If the SID fails to bring the street and road dimensions into compliance with the State Fire Code and property damage, financial loss or loss of life occurs due to the inability of fire fighting equipment to access a fire, can SID board members be held personally liable for such losses?
I have no information regarding the development of the streets or roadways at issue. I assume, however, that the SID in question was formed to either open or maintain streets or roads of the district, pursuant to A.C.A. § 14-92-219 (Supp. 2007) (setting forth the various purposes for which a suburban improvement district may be organized). In response to your question concerning discrepancies between a filed plat and the streets and roadways of the SID, I have found no state law making a suburban improvement district responsible for correcting such discrepancies. The county's approval of the plat entitled the developer to place the plat of record. See A.C.A. § 14-17-208(f) and (l) (Supp. 2007) and Rickman v. Mobbs, 253 Ark. 969, 490 S.W.2d 129 (1973). Depending upon any applicable county regulations, the county quorum court might have conditioned development upon the developer's complying with minimum standards for streets. See A.C.A. §§ *Page 4 14-17-207(f) and — 208(b). In my opinion, however, the design or dimension of streets or roads as shown on a subdivision plat generally does not apply to the opening or maintenance of streets or roads by a SID.
In response to the second part of this question, concerning notification for purposes of insurance rates, my research has yielded no provision in state law obligating a SID to provide such notice.
The answer to the third part of this question is "no," in my opinion, absent corrupt or malicious intent on the part of the board member(s). This is in accordance with A.C.A. § 14-92-207, which provides:
 No member of the [suburban improvement district] board shall be liable for any damages unless it shall be made to appear that he had acted with a corrupt and malicious intent.
Reference should also be made to the immunity afforded by A.C.A. §21-9-301 (Repl. 2004):
 (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
 b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
The application of this statute to a suburban improvement district was addressed by one of my predecessors as follows:
 Suburban improvement districts are authorized by Ark. Stat. Ann. 20-701 et seq. [A.C.A. § 14-92-201 et seq.]. It appears that a suburban improvement district is a special improvement district because the special assessments are to be used for a particular public purpose. *Page 5 
 The immunity afforded by Ark. Stat. Ann. 12-2901 [A.C.A. § 21-9-301] has been held to extend to officers, directors, and employees in actions brought against them in their official capacities. Matthews v. Martin, 280 Ark. 345, 658 S.W.2d 374.
 It would therefore follow that directors/commissioners of a special improvement district would be entitled to the immunity afforded by 12-2901 [subsection 21-9-301] so long as their conduct can be characterized as being within their official capacity and meeting the criteria of being undertaken in good faith.
Op. Att'y Gen. 87-121.
Question 4 — Must all contract work on public property in the SID(road work) be advertised for public bidding and such bids opened in apublic meeting?
In my opinion, competitive bidding will be required pursuant to A.C.A. § 22-9-203 (Supp. 2007), if the contract is one for major repairs, alterations or permanent improvements. The answer to the second part of this question is "yes," in my opinion. A public meeting will be required for opening such bids, pursuant to the Arkansas Freedom of Information Act (FOIA).
Subsection 22-9-203 provides in pertinent part:
 No contract providing for the making of major repairs or alterations, for the erection of buildings or other structures, or for making other permanent improvements shall be entered into by the state or any agency thereof, any county, municipality, school district or other local taxing unit with any contractor in instances where all estimated costs of the work shall exceed the sum of twenty thousand dollars unless [the entity invites competitive bidding as specified].
Under this statute, the SID will be obligated to advertise for competitive bids, id. at (a) — (c), for contract work on public property in the SID under two conditions: (1) if the contract might be characterized as one for major repairs, alterations or permanent improvements; and (2) if the SID qualifies either as an agency of the state or as a local taxing unit. As a statutorily authorized local taxing unit, see A.C.A. § 14-92-220(c) and — 228 (Repl. 1998), a suburban improvement district plainly meets the second prong of this test. Moreover, as the Arkansas Supreme *Page 6 
Court noted in Quapaw Central Business Improvement District v.Bond-Kinman, Inc., 315 Ark. 703, 706, 870 S.W.2d 390 (1994):
 Improvement districts are agents of the state and derive their limited powers and duties of a public nature by legislative delegation through the taxing power of the state, and "constitute a separate and distinct species of taxing districts as contradistinguished from counties, municipal corporations and school districts." . . . Further, there is a wealth of case law acknowledging the agency status of improvement districts as governmental in nature.
(Citations omitted.)
Finally, A.C.A. § 22-9-205 expressly includes the category of "improvement district" among the entities that might enter into a contract subject to the provisions of A.C.A. § 22-9-203. In response to your particular question, therefore, while public bidding is not required for all contract work on public property in the SID, the competitive bidding requirement set forth at A.C.A. § 22-9-203 will apply to contracts for major repairs, alterations or permanent improvements.
With respect to the requirement that meetings to open bids must be open, the FOIA provides:
 Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
A.C.A. § 25-19-106(a) (Supp. 2007).
As "agents of the state," Quapaw Central Business Improvement District,supra, supported through local assessments, A.C.A. § 14-92-225 — 228, suburban improvement districts clearly fall within this statute. Several of my predecessors have so opined. Op. Att'y Gen. Nos. 2001-023 and 92-312. When the SID board of commissioners meets to "open and compare the bids," A.C.A. § 22-9-203(d), *Page 7 
therefore, such meetings in my opinion must be held as "public meetings" pursuant to the FOIA.
Question 5 — Must all purchases of equipment for the SID be placed atpublic bidding?
The answer to this question is "no," in my opinion. According to my review, a suburban improvement district formed under A.C.A. § 14-92-201et seq., is not subject to any competitive bidding requirement in its purchase of equipment or other commodities. Compare A.C.A. § 14-22-101
(Supp. 2007) (county purchasing), A.C.A. § 14-58-303 (Supp. 2007) (purchasing by cities of the first class), and A.C.A. § 19-11-207 (Repl. 1998) (state agency purchasing).
Question 6 — If a manager of a SID, a salaried employee, commits fraudagainst the people of the district, can the elected members of the SID'sgoverning board be held liable for the manager's actions, if they failedin their duties to properly supervise the manager's actions?
Generally "no," in my opinion, absent corrupt or malicious intent on the part of the board member(s). See response to Question 3(b) above.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL
Attorney General
[1] See A.C.A. §§ 14-17-201 — 211 (Repl. 1998 and Supp. 2007) (county planning and zoning) and 14-56-301 — 426 (Repl. 1998 and Supp. 2007) (city planning and zoning). *Page 1